[L. A. 16322.   In Bank.—December 23, 1940.]

PACIFIC MUTUAL LIFE INSURANCE COMPANY (a Corporation), Plaintiff, v. SUSANNAH G. CLEVERDON, Appellant; W. A. STREET, Respondent.

Robert L. Faucett, Winterer & Ritchie and E. Winterer for Appellant.

Wayne R. Millington, Leo V. Youngworth and J. Harold Decker for Respondent.

THE COURT.—The appeal in this case was originally heard by the District Court of Appeal, First Appellate District, Division Two. Following a decision by that court, a petition for hearing by this court was granted. Consideration of the several points of law that have been presented by the respective parties to the litigation has resulted in a conclusion that the case was correctly decided by the District Court of Appeal. Its opinion rendered therein, which was prepared by Mr. Justice Spence of that court, is therefore adopted by this court as its own. It is as follows:

"This action in interpleader was brought to determine the conflicting claims of defendant Susannah G. Cleverdon and W. A. Street to the proceeds of a 'Life Income Bond' issued by plaintiff. In its judgment, the trial court apportioned the proceeds between said defendants. Defendant Susannah G. Cleverdon appeals from said judgment. Defendant Susannah G. Cleverdon will be hereinafter referred to as appellant and defendant W. A. Street will be hereinafter referred to as respondent.

"Said 'Life Income Bond' was issued in 1926 to Helen Frances Cleverdon, as insured, with appellant named as the beneficiary therein. At that time, the insured was unmarried but in 1930 she married respondent. The insured died in 1936.

"The insured was a school teacher and she continued in her employment after her marriage and up to the time of her death. Respondent was a dentist. Prior to and after

the marriage, the insured maintained a separate bank account in her own name and all of her earnings were deposited in that account. All of the premiums paid to plaintiff were paid by the insured out of that account. Respondent also maintained a separate bank account into which most of his earnings were deposited. Respondent testified that he did not deposit all of his earnings in his bank account, stating, 'Well, not always, money that I would take in in cash, I would take home and use as expenditures at home' and 'Sometimes I deposited some of the money that I earned in her account, sometimes.' He further testified, however, that at various times he borrowed money from his wife which he repaid or intended to repay. However, the exact amount of the borrowings and of the repayments does not appear in the record. He testified that he had not repaid all that he had borrowed and it is entirely probable that the deposits in his wife's account were made on account of such repayments. In any event respondent testified that the premiums on the insurance policy in question were paid by his wife out of her earnings.

"Throughout the testimony, respondent referred to the wife's bank account as 'her account' and to the money therein as 'her money.' While he testified that there was no express agreement concerning said money, the only conclusion which can reasonably be drawn from the testimony is that he relinquished all control over said money and treated it as the separate property of his wife. Other witnesses testified to various statements made by respondent to the effect that 'her salary was her own.' While respondent testified, 'No, I never made any statement to that effect, that I gave her anything that was hers,' this testimony in itself implies that respondent deemed said earnings to be the separate property of his wife.

"Appellant alleged in her answer that the claim of respondent was without any right whatsoever; that respondent had not any right, title or interest in the proceeds of the policy; that the policy was the separate property of the insured; that all premiums were paid out of the separate property of the insured; and that appellant, as the named beneficiary, was entitled to all of the proceeds thereof. Respondent merely alleged that all premiums paid subsequent to the marriage were paid out of community funds and he sought judgment for a proportionate share of the proceeds

of the policy. The trial court found that all premiums paid subsequent to the marriage were paid out of community funds and it entered judgment awarding to respondent a proportionate share of the proceeds of the policy.

''Appellant contends that the trial court erred in awarding any portion of the proceeds of the policy to respondent. We are of the opinion that this contention must be sustained.

''In support of said contention appellant first claims that the evidence was insufficient to support the finding that the premiums, paid after marriage, were paid out of community property. This claim appears to be well founded. The settled rule is stated in 3 California Jurisprudence Supplement, at page 643, section 129, as follows: 'While the rule is otherwise in some of the community property states, in California the husband may relinquish to the wife the right to her earnings during marriage without any consideration other than their mutual consent, and her earnings thereupon become her separate estate. Such relinquishment and mutual consent may be shown by evidence of the acts or conduct of the husband, indicating that he did not regard the earnings as community property.' (See *Wren* v. *Wren*, 100 Cal. 276 [34 Pac. 775, 38 Am. St. Rep. 287]; *Kaltschmidt* v. *Weber*, 145 Cal. 596 [79 Pac. 272]; *Diefendorff* v. *Hopkins*, 95 Cal. 343 [28 Pac. 265, 30 Pac. 549]; *Gray* v. *Perlis*, 76 Cal. App. 511 [245 Pac. 221]; *Smith* v. *Smith*, 47 Cal. App. 650 [191 Pac. 60]; *Larson* v. *Larson*, 15 Cal. App. 531 [115 Pac. 340].) When respondent's testimony is reviewed in the light of these authorities, we see no escape from the conclusion that the earnings of the insured, out of which the premiums were paid, were her separate property as all of the acts and conduct of respondent clearly indicated that he did not regard his wife's earnings as community property and that he had relinquished to his wife the right thereto.

''But appellant makes the further claim that even if the premiums, paid after marriage, were paid out of community property, said premiums were paid with the knowledge and consent of respondent and he was therefore not entitled to share in the proceeds of the policy. We believe that this claim is equally well founded. It is conceded by respondent that the premiums on this policy were paid by his wife with his knowledge and consent. We believe this fact

precludes respondent from successfully asserting a claim to any of the proceeds of the policy as against the beneficiary named therein.

"The parties have discussed at some length the authorities in this state dealing with the general subject of the right of a surviving wife as against a named beneficiary to a portion of the proceeds of an insurance policy issued upon the life of the husband where the premiums have been paid by the husband with community funds. The reason underlying the rules established by said authorities is summed up in *Travelers Insurance Co.* v. *Fancher,* 219 Cal. 351, at page 353 [26 Pac. (2d) 482], as follows: 'As shown by a number of later cases, among them being *Union Mutual Life Ins. Co.* v. *Broderick,* 196 Cal. 497 [238 Pac. 1034], and *Blethen* v. *Pacific Mutual Life Ins. Co.,* 198 Cal. 91 [243 Pac. 431], the doctrine of the New York Life Ins. Co. case, *supra,* is based on the following legal propositions: First, where premiums of an insurance policy issued on the life of the husband after coverture are paid entirely from community funds, the policy becomes a community asset; second, the designation of a beneficiary in a policy of life insurance initiates in favor of the beneficiary an inchoate gift of the proceeds of the policy, which, if not revoked by the insured prior to his death, vests in the beneficiary at the time of his death; third, the husband may not make a gift of the entire community property without the written consent of the wife; but if he attempt so to do, in contravention of the wife's rights (as in the case of life insurance policy, by naming a third party as beneficiary) the entire gift is not a nullity; it is subject only to the wife's right to have it revoked as to the half to which she would be entitled upon his death; and as to the remaining half, the gift is valid and immune from attack by the surviving wife or by those who under the law of succession would inherit the husband's share in case he made no disposition thereof up to the time of his death. (*Spreckels* v. *Spreckels,* 172 Cal. 775 [158 Pac. 537], and *Dargie* v. *Patterson,* 176 Cal. 714 [169 Pac. 360].)'

"We find none of the above-mentioned authorities in point. It will be noted that each of said cases involved a policy which was issued upon the life of the husband and the premiums for which were paid by the husband out of community funds. The reason for the rules established in such cases is that the husband, who had the right to manage and control

the community funds subject to certain limitations (Civ. Code, sec. 172), had acted in contravention of the wife's rights. But the reason for the rule ceases in cases, such as the present one, where the acts of the wife were done with the knowledge and consent of the husband and nothing was done in contravention of any of his rights. We therefore conclude that respondent may not now complain and that he is not entitled to share in the proceeds of the policy.

"In view of the conclusions which we have reached, we deem it unnecessary to discuss certain additional claims made by appellant. We further believe that the admitted facts make this an appropriate case in which to reverse the judgment with directions.

"The judgment is reversed with directions to the trial court to enter its judgment awarding the entire proceeds of the policy to defendant Susannah G. Cleverdon."

Mr. Justice Houser did not participate in the foregoing decision.