[Civ. No. 20117. Second Dist., Div. One. Nov. 23, 1954.]

KENNETH H. NEVINS, Appellant, v. ANTOINETTE NEVINS, Respondent.

William B. Murrish, Charles E. Taintor and Scott Weller for Appellant.

Shelby Lee Chambers and John R. Barta for Respondent.

MOSK, J. pro tem.*—Appellant seeks reversal of an adverse judgment in his quiet title action in the court below, and insists as a matter of law he is entitled to prevail.

Kenneth and Antoinette Nevins were married in 1929, and although they are now divorced, and Kenneth has remarried, for convenience we shall herein refer to them as husband and wife. They have two daughters, one born in January, 1930, the other in December, 1930. There is no evidence that either possessed any separate property at the time of their marriage, or that either acquired property by gift or bequest from any third party during marriage. Up to June, 1941, the couple resided together in Los Angeles, where for the three years preceding the husband had been employed as a salesman for a beverage company. Additionally they operated a small retail liquor business in the city of Bell, Los Angeles County, and frugally resided in the rear of the store.

Offered a position in Hawaii by the beverage concern, the husband accepted and departed on June 4, 1941, the wife and children remaining in Los Angeles. The wife continued to conduct the business enterprise, which prospered due to the combination of her industry, skillful management, and the war economy.

On February 3, 1944, the wife, without her husband's prior knowledge, purchased an eight unit apartment court in Bell for $23,000, of which $8,000 was paid in cash and the balance under a promissory note secured by a deed of trust. The $8,000 was borrowed from friends, and the wife obligated herself alone to repay both that sum and the note for the balance due on the court. At that time the wife did not disclose her husband was in Hawaii, but represented to the vendor and to the lenders that he was a war casualty. The instruments were executed to and by "Antoinette Nevins, a widow."

Through the years the parties corresponded with reasonable regularity and varying degrees of warmth. Under date of February 9, 1944, the wife informed her husband that she had acquired some income property, although she did not provide the details. Not having returned to the mainland

---

*Assigned by Chairman of Judicial Council.

in the interim, the husband filed suit for divorce in Hawaii on September 6, 1947, making no allegations of any interest in the Bell property. He obtained a decree on January 5, 1948, and two days later remarried.

During his absence the husband sent funds for support of the two daughters, but a considerable disparity developed at the trial in the sums calculated by the respective parties. Regardless of the amounts, there seems to be no serious contention that the husband sent the wife any money other than for child support. She earned her support exclusively by her own efforts.

On March 9, 1949, the husband filed suit in Los Angeles Superior Court to quiet title to the eight-unit court. At the first trial in 1951, Judge Hugh E. Brierly of Inyo County, sitting in Los Angeles County by assignment of the Judicial Council, found for the husband in a brief memorandum, but the judge died before he could sign findings and judgment. A retrial was ordered. At the second trial, the wife prevailed, and this appeal followed.

It was not contended that the wife was ever established by judicial decree as a sole trader (Code Civ. Proc., §§ 1811-1821), or that Civil Code, section 169, was here applicable, since the trial court in a memorandum opinion found the intention to live permanently separate had not formed in the husband's mind at the time the wife acquired the Bell property.

The husband first insists that the trial court erroneously applied the presumption contained in Civil Code, section 164, and as a result an improper burden of evidentiary proof was placed upon him. The pertinent portion of that code section reads: "... whenever any real or personal property, or any interest therein or encumbrance thereon, is acquired by a married woman by an instrument in writing, the presumption is that the same is her separate property, ...."

From the earliest period of California history courts have adhered to the Spanish law rule accepted in community property states that the presumption attending the possession of property by either a husband or wife is that it belongs to the community. Exceptions to the rule must be proved, and the burden rests with the claimant of the separate estate. (*Meyer* v. *Kinzer* (1859), 12 Cal. 247 [73 Am.Dec. 538]; *Wilson* v. *Wilson* (1946), 76 Cal.App.2d 119 [172 P.2d 568].)

In 1889, however, by direct statutory change, the foregoing general rule was modified as to properties held in the wife's name. In those situations, according to the addition to Civil Code, section 164, where property is acquired during marriage by a married woman by an instrument in writing, the presumption is not that the property is community, but the contrary, that it is separate. (Armstrong, California Family Law, pp. 440-441; 10 Cal.Jur.2d 713.) ■ The burden is then upon the husband seeking to claim the property for the community. (*Dunn* v. *Mullan,* 211 Cal. 583 [296 P. 604, 77 A.L.R. 1015] ; *Pearson* v. *Hellman Commercial etc. Bank,* 199 Cal. 305 [249 P. 10].) Originally this portion of Civil Code, section 164, was limited to conveyances of real property (*Stafford* v. *Martinoni,* 192 Cal. 724 [221 P. 919] ; 12 Cal.L.Rev. 421) but a further amendment in 1927 extended its application to acquisition of any interest in or encumbrance on real or personal property. (10 Cal.Jur.2d 715.)

■ As against the husband, the presumption is disputable, and may be controverted by other evidence, direct or indirect. But the evidence to overthrow the presumption must be "clear and convincing" (*Attebury* v. *Wayland,* 73 Cal.App.2d 1, 5 [165 P.2d 524]). ■ Whether or not it is so controverted is a question of fact for the trial court, its conclusions, unless manifestly without sufficient support in the evidence, being conclusive on appeal. (*Nichols* v. *Mitchell,* 32 Cal.2d 598, 605 [197 P.2d 550] ; *Bales* v. *Farley,* 107 Cal.App.2d 642, 647 [237 P.2d 686].)

■ The following elements in the testimony may be said to support the husband in his efforts to overcome the presumption created by the form of the deed: The failure of the wife to advise him of the purchase until it was a *fait accompli*; the duplicity of the wife in representing she borrowed $2,000 when in reality the sum was $8,000 ; the repeated false representations to the vendor and the lending agency that she was a widow; the correspondence between the parties up to late in 1944 which could be interpreted as indicating continued marital affection coupled with mutual economic goals.

On the other hand, these circumstances tend to support the presumption: the business was in the name of the wife, the husband being unable under the law to obtain a liquor license because of a past offense; the wife maintained complete control of the business, both with the husband's knowl-

edge and consent while he was in California, and by the acquiescence implied by virtue of his prolonged absence in Hawaii; the wife received no support from the husband and testified the husband agreed to send support money for the children but that she was to be left strictly "on her own"; the trial court found her evidence convincing that support of the children cost her more than the sums sent by the husband so that none of the money sent by him was used in the purchase of the property; the husband filed separate tax returns, but he neither claimed nor paid tax on any income from the store or the real property; the divorce complaint filed in Hawaii made no assertion of any interest in the store or the eight-unit court, although long before that time the husband had been informed of the latter purchase; in correspondence from the husband's attorney relative to the divorce proceeding, reference was made to her "prosperous business"; in her correspondence back in 1944, the wife referred to her acquisition of income property for her personal security, and with regard to this the evidence reveals no correction or challenge by the husband.

The foregoing capsulated excerpts reveal a conflict in the evidence. We cannot say as a matter of law the trial court erroneously weighed the evidence. On the contrary, the presumption of separate property is amply and convincingly supported.

Even were we to adopt appellant's position, which we do not, and dilute in importance or eliminate the presumption of Civil Code, section 164, altogether from our consideration, we believe the trial court's judgment should be upheld, first by virtue of an agreement between the husband and wife concerning the property and second, on the basis of relinquishment by the husband of any claims he might otherwise have to the wife's acquisition.

As stated in *Wren* v. *Wren,* 100 Cal. 276, at page 279 [34 P. 775, 38 Am.St.Rep. 287]: " . . . there can be no doubt that a husband and wife may agree between themselves without any other consideration than their mutual consent, that money earned by the wife in performing any work or service which does not devolve upon her by reason of the marriage relation shall belong to her as her own, and, when money has been earned by the wife under such an understanding or agreement with the husband, it is her separate property, and she may maintain an action to recover the same. An agreement between husband and wife, by which

the husband relinquishes all claim to the earnings of the wife, is one which relates to the acquisition of property by the wife, and is an engagement or transaction respecting property, within the meaning of section 158 of the Civil Code . . ." In *Wren* there was a mere oral agreement, which the husband claimed was invalid because it related to future earnings, something not then in existence. This is comparable to appellant's assertion in the instant case that he could not have consented to the acquisition of the property involved because he had no knowledge of it. The court held, however, that property not yet acquired could be the subject of an agreement between a husband and wife pursuant to sections 158 and 159 of the Civil Code.

Whether there was an agreement between the husband and wife is a question for the trier of fact. It is true here that no testimony was adduced of an agreement in the sense of a commercial offer and acceptance. But the cases indicate that as between a husband and wife, no such contractual formalities are expected or required. By correspondence the husband was informed immediately after the purchase. Under the circumstances of his prolonged absence and his apparent insistence that his wife fend for herself without the support to be anticipated from a dutiful husband, he had an affirmative duty to remonstrate promptly if he desired to assert any rights to the property. He did not do so. It is reasonable to infer acquiescense from his silence.

The facts in *Kaltschmidt* v. *Weber*, 145 Cal. 596 [79 P. 272], are remarkably comparable to the instant case, although the litigation was of a probate nature. The wife had kept a boarding house for many years, during which time she collected all the rents and managed the disbursement of all funds without interference or objection from her husband. Said the court at p. 599-600: "Now, it may well have been the case that the husband could recall no conversation between them in which such an agreement was distinctly expressed. His testimony strongly indicates this condition of memory. And yet it might also be true that the fact that there was such an agreement was perfectly well understood between them. In such a case resort may be had to circumstantial evidence. The conduct and actions of the husband with respect to such earnings, indicating that he did not regard them as community property, or that he had relinquished to her the right to control and dispose of her receipts from that source, would be competent evidence and admissible to prove

the agreement. . . . If, in connection with all these facts, the plaintiff had been allowed to prove that during the twenty-two years of their married life the wife had had exclusive and undisturbed control of her earnings, treating the same as her own property, and disposing of them as she pleased, without consulting her husband, such evidence would certainly tend to prove an understanding between them that such earnings were to be her own separate estate."

*Tagus Ranch Co.* v. *First Nat. Bank,* 7 Cal.App.2d 457 [46 P.2d 809], is also factually similar to the instant case, except that there the husband disappeared and contributed nothing to the support of his family. The comparability lies in the activities of the wife, her self-sufficiently conducting the business, moving and expanding it, borrowing money from the bank. Quoting the case of *Union Oil Co.* v. *Stewart,* 158 Cal. 149, 155 [110 P. 313, Ann.Cas. 1912A 567], the court said, " . . . there is no consideration of public policy which prevents her from exercising the same powers and acquiring the same rights with respect to the property left in her hands as if she were an unmarried person."

An agreement may be shown not only by words written or spoken, but by conduct. Thus the law recognizes that by an overt act, or by acquiescence in the acts of his wife, a husband may relinquish his community rights and permit property to be converted into the wife's separate property. The husband's knowledge of, and apparent acquiescence in the wife's claim of property being hers separately is a valid defense to his action to recover the property. (*Pacific Mut. Life Ins. Co.* v. *Cleverdon,* 16 Cal.2d 788 [108 P.2d 405]; 10 Cal.Jur.2d 774.)

In *Pacific Mut. Life Ins. Co.* v. *Cleverdon, supra,* at page 791, the court said: " . . . in California the husband may relinquish to the wife the right to her earnings during marriage without any consideration other than their mutual consent, and her earnings thereupon become her separate estate. Such relinquishment and mutual consent may be shown by evidence of the acts or conduct of the husband, indicating that he did not regard the earnings as community property." In *Gray* v. *Perlis,* 76 Cal.App. 511 [245 P. 221], the court found an agreement to relinquish to the wife her earnings and a business enterprise, even though the husband was employed in conducting the business. In *Smith* v. *Smith,* 47 Cal.App. 650 [191 P. 60], there was a conflict as to whether

the money with which the wife started a millinery business came from a sale of her separate property or from the husband. The evidence disclosed the wife kept the funds in a separate bank account and paid all bills out of this account to which the husband had no access. This, said the court (at p. 653) made it apparent "that plaintiff made no claim to the business but treated it as his wife's separate property. The right to the millinery business and the earnings derived therefrom having been thus relinquished by plaintiff to his wife, they did, in fact, become her separate property."

Appellant insists there was no significance in his failure to allege the existence of and his interest in the Bell property in the Hawaiian divorce action. ■ It is true that determination of property rights is not essential to a divorce action in California, and if not so adjudicated, property rights may be the subject of an independent action. (*Estate of Williams,* 36 Cal.2d 289 [223 P.2d 248, 22 A.L.R.2d 716]; *Tarien* v. *Katz,* 216 Cal. 554 [15 P.2d 493, 85 A.L.R. 334].) ■ In the absence of evidence to the contrary, the law of a foreign jurisdiction is presumed to be the same as that of California (*Christ* v. *Superior Court,* 211 Cal. 593 [296 P. 612, 77 A.L.R. 1015]) and we therefore apply the foregoing and following principles to the Hawaiian divorce proceeding. ■ That the courts of one jurisdiction cannot make a decree which will operate to change or directly affect the title to real property beyond the territorial limits of its jurisdiction must be conceded. ■ The doctrine that a court, not having jurisdiction of the *res,* cannot affect it by its decree is firmly established. (*Taylor* v. *Taylor,* 192 Cal. 71, 76 [218 P. 756, 51 A.L.R. 1074].) On the other hand, it is not unusual for a court by means of its authority over the person of the parties before it to compel them to act in relation to property not within the jurisdiction, such as to execute conveyances or to cancel instruments, and, of course, in order to do so it is generally necessary to make a finding as to the nature of the property. (*Taylor* v. *Taylor, supra.*) ■ Thus this appellant could have set up his claim to the Bell property in the Hawaiian divorce action, and if successful in persuading the court there of his interest in it, obtained an order compelling respondent to execute a deed *to all or any* specified portion of the property. His failure to do so is another circumstance that was properly considered by the trial court in analyzing the relationship and understanding between the parties. If the appellant actually be-

lieved he obtained an interest in the investment which he then knew, at least in generality, his wife had made, it is difficult to comprehend his failure to assert those rights at a time when he was severing all marital relationship with and financial obligation to his wife. What he did, and what he omitted to do, are eloquent declarations against interest.

That the husband had no momentary lapse of memory concerning his wife's enterprises is indicated by correspondence from appellant's counsel during divorce negotiations in 1947, in which reference was made that " . . . Mrs. Nevins apparently has a prosperous business."

The trial court also gave considerable weight to the husband's income tax computation. Filing a separate return, it was his duty to report half of the net profits from any business venture in which he claimed an interest. He did not so report, nor did he pay any tax on income from the Bell operations. This, deduced the trial court, was "plaintiff's own recognition and application of an understanding with his wife thoroughly consistent with her testimony and her understanding." That distance alone was not the determinative factor in this omission is suggested by his claiming tax exemption for his two daughters as dependents, although they, like the business, were in California.

A trial court may construe income tax returns as evidencing an agreement concerning the nature of property (*Heck* v. *Heck*, 63 Cal.App.2d 470, 475 [147 P.2d 110].) It is true that tax returns are not conclusive evidence of the nature of property, but they are a circumstance to be considered by the trier of fact. (*Kenney* v. *Kenney*, 128 Cal. App.2d 128, 135 [274 P.2d 951].)

The husband has repeatedly asserted the wife committed serious offenses in describing herself a widow, when she well knew her husband was then alive. It is impossible to condone that conduct, or to fully accept her rationalization that she "felt myself as a widow" because he was abandoning her and requiring her to support herself "from then on." Her foreboding was translated into reality, since the husband never did return to her, but correspondence does not disclose this was a certainty as early as 1944 when she obtained the property.

However, the description of the parties in a conveyance is not necessarily of controlling significance. The effective arrangement is between the husband and wife, not between the wife and her vendor. (McKay on Community

Property, 2d ed., p. 627.) Thus the designation of the wife as a widow is meaningless here since she in fact was not a widow. Her self-description was considered by the trial court, along with all other evidence. That it was not deemed crucial is, we believe, entirely proper in view of all the circumstances.

From the departure of her husband in 1941 to date this wife supported herself by operating a small business and frugally living in the back of the shop, and at the same time she reared two daughters. A compassionate balancing of the equities suggests her years of lonely struggle to eke out an existence and to achieve a small measure of security by acquiring modest income property should not be nullified by the late return of a predatory ex-husband. Fortunately the law sustains her position.

The judgment is affirmed.

White, P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied December 13, 1954, and appellant's petition for a hearing by the Supreme Court was denied January 19, 1955.