**ACME DISTRIBUTING COMPANY, California Beverage & Supply Co., and Young's Market Company, Appellants,**

**v.**

**John COLLINS, doing business as Stan's Stage Coach Stop, alleged bankrupt, Appellee.**

**No. 15234.**

United States Court of Appeals Ninth Circuit.

July 8, 1957.

Craig, Weller & Laugharn, Thomas S. Tobin, C. E. H. McDonnell, Frank C. Weller, and Hubert F. Laugharn, Los Angeles, Cal., for appellant.

Grainger, Carver & Grainger, Los Angeles, Cal., Patricia Hofstetter, Whittier, Cal., and A. O. Carver, Los Angeles, Cal., for appellee.

Before LEMMON, CHAMBERS, and BARNES, Circuit Judges.

LEMMON, Circuit Judge.

In at least three recent decisions,[1] this Court has stressed the principle that a court of bankruptcy is a court of equity. If this pronouncement is to amount to more than a mere succession of words making grammatical sense, it means that the parties in a bankruptcy proceeding should act with *uberrima fides*.

In other words, the participants in a bankruptcy suit are to be judged, to borrow the classic prose of Mr. Justice Cardozo, according to standards that are "stricter than the morals of the market place".[2]

In the instant case, we do not believe that the bankrupt has met those exacting standards.

1. *Statement of the Case*

On September 8, 1955, an amended involuntary petition in bankruptcy was filed against John Collins, hereinafter referred to as the bankrupt, by three of his creditors.

The petition charged that within four months immediately preceding its filing, the bankrupt was insolvent, and that on or about August 4, 1955, he made or suffered to be made a transfer of his property "fraudulent under the provisions of Sections 67 and 70" of the Bankruptcy Act (11 U.S.C.A. §§ 107 and 110),[3] in the following manner:

1. First National Bank of Portland v. Dudley, 9 Cir., 1956, 231 F.2d 396, 398; Lines v. Falstaff Brewing Co., 9 Cir., 1956, 233 F.2d 927, 930, certiorari denied, 1956, 352 U.S. 893–894, 77 S.Ct. 129, 1 L.Ed.2d 88; Bookey v. King, 9 Cir., 1956, 236 F.2d 871, 872.

2. Meinhard v. Salmon, 1928, 249 N.Y. 458, 164 N.E. 545, 546, 62 A.L.R. 1, 5.

3. For a full discussion of fraudulent conveyances under the Bankruptcy Act, see "Suicide or Bankruptcy?", Stanford Law Review, December, 1952, Volume 5, Number 1, Page 84 to end.

"That on or about August 4, 1955, and at which time the bankrupt was insolvent, the bankrupt caused a transfer of a certain on sale general distilled spirits license to one Fred De Carlo without a fair consideration or without any consideration therefor, and which thereby rendered him insolvent, which said on sale liquor license was and is of a reasonable and current market value of between $4,500.00 and $5,000.00; that said bankrupt completed the said transfer in so far as any act required of him to do in order to effectuate said transfer, in that on August 4, 1955, and within four months preceding the filing of the petition herein, the bankrupt filed with the California Department of Alcoholic Beverage Control an application for transfer of license duly executed by him and acknowledged before a Notary Public, whereby he transferred said liquor license to the said Fred De Carlo; that said transfer was thereby so far completed that neither the bankrupt nor a bona fide purchaser from him could obtain greater rights in said liquor license than the said Fred De Carlo."

The bankrupt's answer, filed on September 24, 1955, denied, *inter alia,* that he owed any sum whatever to any of the petitioning creditors; admitted that he had filed with the state beverage control department, supra, a "Declaration of Intention to transfer license to Fred De Carlo"; and as a "Second Defense" alleged that "he was not insolvent at the time of the filing of the original creditors' petition and the institution of the proceedings herein".

On December 16, 1955, the Referee found that the bankrupt was engaged in the retail liquor business in Norwalk, California; that he was indebted to the three creditors as claimed; that he was insolvent on August 4, 1955, when he filed with the state beverage control department, supra, an application to transfer his liquor license, supra, to De Carlo, etc., as stated in the complaint.

The Referee also found that the bankrupt was insolvent; that all of his assets, including exempt property, totaled in value $7,068.75, and his liabilities, $8,867.23.

On the same day, the Referee filed an "Order Adjudging Alleged Bankrupt to Be a Bankrupt".

On February 27, 1956, the District Judge remanded the case to the Referee with instructions "to hear the testimony of the wife of bankrupt and such additional testimony as may be offered as to the circumstances under which the title to the real property now standing of record in the name of the wife * * * was carried," etc.

On March 28, 1956, the Referee filed his "Memorandum upon Remand", in which he stated that the wife's testimony "corroborated, in substance, the testimony previously given by the bankrupt that although title to the property was taken and remains in the name of the wife, * * * it was purchased with community assets, and that there was never any intention that it should be the wife's separate property. In other words, the testimony is that the bankrupt did not make a gift to the wife of the community assets which were used to purchase the property, and that the said property at the date of the said transfer was the community property of the bankrupt and his wife". The Memorandum continued:

"The Referee finds the aforesaid testimony of both the bankrupt and his wife to be entirely self-serving and unworthy of belief by this Court. We have here a flagrant situation. The bankrupt transferred a liquor license of a value of approximately $5,000.00 without any consideration whatsoever. If he was insolvent on the date of the transfer the order of adjudication in this case was proper. If he was solvent it was improper. If the property here in question was community property, the bankrupt was solvent; if it was the separate prop-

erty of the wife, as it is presumed to be under the provisions of Section 164 of California's Civil Code [*infra*], he was insolvent.

"*It is obvious that John Collins does not want to be adjudged a bankrupt. Hence it served his purpose to testify as he did and it is the opinion of the Referee that the wife, in her testimony, simply went along with him.*

"We are concerned here with an item of property which has been placed beyond the reach of a Trustee in Bankruptcy by the recordation of a declaration of homestead. It would likewise be beyond the reach of creditors outside of bankruptcy. Therefore, the bankrupt and his wife are perfectly safe and secure in testifying to facts which might support a finding that the property is community property. If any interest the bankrupt might have in the property would be non-exempt in this proceeding, or subject to the claims of creditors outside of bankruptcy, it is the definite opinion of the Referee that the testimony of the bankrupt and his wife would have been much different than [*sic*] it was." [Emphasis supplied.]

On May 18, 1956, the District Judge filed a "Memorandum Opinion on Petition for Review", holding "that the Referee was wrong in declining to consider the value of this equity in determining the matter and that his finding of insolvency is clearly erroneous". [141 F.Supp. 30]

On July 3, 1956, the District Judge filed his "Findings of Fact, Conclusions of Law and Order of Judge Reversing Order of Referee on Review," decreeing "that the order of the Referee dated the 16th day of December, 1955, adjudging the alleged bankrupt to be a bankrupt be, and the same hereby is reversed, and the Order of Adjudication entered pursuant thereto be, and the same hereby is vacated and set aside, and the alleged bankrupt be, and he hereby is decreed to be not bankrupt."

From that order, on July 10, 1956, the present appeal was taken.

2. *Statement of Facts*

Although the transcripts in this case aggregate 305 printed pages in length, the appellant, the appellee, the Referee, the District Judge, and this Court are in entire agreement on one point; namely, that, in the language of the District Court, "The facts other than insolvency need not detain us. For the entire dispute on review centers on the finding of insolvency, which is challenged as unsupported by the evidence."

Accordingly, we will state chiefly the facts dealing with the insolvency of the bankrupt, and his lack of candor in that respect.

In the first place, the bankrupt's answer, "verified under oath", as required by statute (11 U.S.C.A. § 41, sub. c), flatly denied owing a single cent to any of the three creditors. The proof is clear that this denial was false. The learned District Judge himself found that the bankrupt owed the three petitioning creditors the respective sums set forth in the amended involuntary petition.

The bankrupt moved to California from Niagara Falls, New York, in October, 1951. He testified that he ceased doing business as a retail liquor dealer and cocktail bar proprietor in September, 1954, as a result of a dispute with Stanley E. Lefringhouse, who managed the business.

The value of an "on sale" liquor license at the time and place relevant here, supra, was estimated to be "between $4,500 and $5,000", by Ralph Meyer, an experienced liquidator Roscoe Z. Matthews, the liaison officer between the Department of Alcoholic Beverage Control and the Board of Equalization, said that insofar as Collins was concerned there were no further steps necessary to effectuate a transfer of that license. The bankrupt admitted that on August 4, 1955, he made application to the beverage control board "for transfer

[of the license] to Fred De Carlo", for which De Carlo paid him nothing.

Shown a statement of assets and liabilities that contained an item of "real property, lot 19, tract 16,868, valued at $15,000", which was purchased on December 7, 1951, under an escrow agreement, the bankrupt testified that he "believed" title to it stood in his wife's name. In his earlier testimony, however, he unqualifiedly declared that the property stood in the name of his wife, and that his name was not "on it". His testimony on this point continued:

"Q. Does she claim it as her own property, do you know? A. Well, she says it is. I don't know. We bought it in 1951, when we came here."

A few moments later, the bankrupt said that he thought that his wife had declared a homestead on the property when *she* bought the house.

Elsewhere in his testimony, the bankrupt stated, in reply to a question as to whether he owned any real estate:

"I don't know whether I do or not—the house I live in."

Nor was the bankrupt's wife any more definite in her testimony:

"Q. And you directed that the property be taken in your name? A. Well, I don't know as I directed it be put in my name. It was a matter of convenience, so that I could take care of things so that he could go back East to get the money.

"Q. You were the one that directed the deed be made to you? A. I don't know whether I should answer 'yes' or 'no'. Do you have to direct someone?"

Asked what she meant by "for convenience", Mrs. Collins replied:

"A. Well, there are papers and things. Naturally, they have to be signed when you go into an escrow * * *. My husband had to go back East to get the money because they would not take a personal check on an out-of-town bank. We wanted

to be in there by Christmas, and Mrs. Hogan [one of the vendors] wanted to be with her husband for Christmas. There was not much time between the time we looked at the place and Christmas. John had to go back East, and someone had to be here to take care of the paper work, and that is the way it was left."

The unfriendly flippancy of her reply to the simple question, "Who drew that deed?" was not likely to impress the trier of fact;

"It is in my name. Is that what you want me to say?"

Mrs. Collins was put on the stand not to say what any attorney "wanted" her to say, but to testify to the truth.

"For convenience" was likewise the convenient phrase used by the appellee himself:

"Q. (By Mr. Tobin) Have you any reason now that you can give the Court why you had that property put in your wife's name? A. For the sake of convenience. She was there and she could go ahead and get the escrow started and complete it so that we could move in before Christmas, 1951.

"Q. Convenience in what respect? A. To make the necessary arrangements so that we could move in."

This Court is not interested in the "convenience" of the Collinses or the Hogans, or their Christmas plans in 1951. No doubt it would also have suited the "convenience" of the bankrupt not to have been considered a bankrupt!

The appellee stresses the testimony of Mrs. Temperance Bailey, escrow officer of the Bank of America in Whittier, California, who had charge of the escrow in which the real property in question was purchased and title taken in the name of Ada J. Collins. Mrs. Bailey merely testified that it was her "custom", where the title is to be vested in a married woman as separate property, the husband would sign on the deed itself, or sign "a quit-

**612**

claim deed, in a separate instrument".
Mrs. Bailey's "custom" does not have
the force of law, nor can it override the
plain words of the statute, on the sub-
ject of presumption.

3. *The Applicable Statute*

In his brief, the appellee quotes the
following excerpt from Section 164 of
the Civil Code of California—without in
any way indicating that it is only an
excerpt:

> "All other property acquired after
> marriage by either husband or
> wife, or both, including real prop-
> erty situated in this State and per-
> sonal property wherever situated,
> heretofore or hereafter acquired
> while domiciled elsewhere, which
> would not have been the separate
> property of either if acquired while
> domiciled in this State, is communi-
> ty property."

The appellee, however, should have
pursued the quotation further:

> "*but whenever any real or per-
> sonal property, or any interest
> therein or encumbrance thereon, is
> acquired by a married woman by an
> instrument in writing, the presump-
> tion is that the same is her separate
> property, \* \* \*.*" [Emphasis
> supplied.]

4. *The Presumption That the Real Es-
tate Covered by the Deed in the Wife's
Name Was Her Separate Property Was
"Strong"*

■ The appellee, the Referee, and
the District Court agree that, in the
language of the District Judge, "if to
the assets are [*sic*] added the equity
in the house, the alleged bankrupt is
not insolvent". Or, as the Referee
phrases it, "If the property here in ques-
tion was community property, the bank-
rupt was solvent; if it was the separate
property of the wife, as it is presumed
to be under the provisions of Section 164
\* \* \*, he was insolvent."

The presumption that the property
covered by the deed to the wife was her
separate estate is strong.

A full and scholarly discussion of this
entire subject is to be found in the re-
cent case of Nevins v. Nevins, 1954, 129
Cal.App.2d 150, 153–154, 276 P.2d 655,
657, petition for a hearing by the State
Supreme Court denied, 1955. There the
Court used the following language:

> "From the earliest period of Cal-
> ifornia history courts have adhered
> to the Spanish law rule accepted in
> community property states that the
> presumption attending the posses-
> sion of property by either a husband
> or wife is that it belongs to the
> community. Exceptions to the rule
> must be proved, and the burden rests
> with the claimant of the separate es-
> tate. [Cases cited.]

> "*In 1889, however, by direct stat-
> utory change, the foregoing general
> rule was modified as to properties
> held in the wife's name.* In those
> situations, according to the addition
> to Civil Code, § 164, where property
> is acquired during marriage by a
> married woman by an instrument in
> writing, the presumption is not
> that the property is community, but
> the contrary, that it is separate.
> [Authorities cited.] *The burden is
> then upon the husband seeking to
> claim the property for the communi-
> ty.* [Cases cited.] Originally this
> portion of Civil Code, section 164,
> was limited to conveyances of real
> property [Authorities cited] but a
> further amendment in 1927 extend-
> ed its application to acquisition of
> any interest in or encumbrance on
> real or personal property. [Author-
> ity cited.]

> "As against the husband, the pre-
> sumption is disputable, and may be
> controverted by other evidence, di-
> rect or indirect. *But the evidence
> to overthrow the presumption must
> be 'clear and convincing'.* [Case
> cited.] Whether or not it is so con-
> troverted is a question of fact for
> the trial court, *its conclusions, un-
> less manifestly without sufficient
> support in the evidence, being con-*

*clusive on appeal.* [Cases cited.]"
[Emphasis supplied.]

In Auener v. Suiter, 1920, 46 Cal.App. 301, 304, 189 P. 120, 121, the Court said:

"We have, then, a case where the wife held a grant, bargain, and sale deed of the property executed to her as sole grantee. This is *strong* evidence in favor of the respondent's case and must prevail unless overcome by other evidence.

" 'It is true that the presumption established by section 164 of the Civil Code is not conclusive but may be disputed and overcome by other testimony. *Nevertheless, however, the presumption is itself evidence which may outweigh the positive testimony of witnesses against it,* and will stand as evidence in the case until it is overcome by other testimony.' [Case cited.]" [Emphasis supplied.]

5. *The Referee's Finding That the Bankrupt Was Insolvent When He Made the Transfer in Question Was Based Upon Substantial Evidence and Should Have Been Accepted by the District Judge*

■ The Referee found that the bankrupt was insolvent when he made the transfer of the liquor license without any consideration whatsoever. In arriving at the Finding "the Referee had ruled that the real property occupied by the bankrupt and his family as their home was the separate property of his wife, and that he had no interest therein". As we have seen, there was substantial support for the Finding of insolvency and the ruling upon which it was abased; for, as stated by the District Judge, "The entire question of solvency turns upon the proposition whether the home occupied by the bankrupt and his family at Whittier, California, was the wife's separate property or not." [141 F.Supp. 27] Since, as has been shown, the appellee's evidence was not sufficient to rebut the presumption announced by § 164, supra, the Referee's finding was cor-

rect. Indeed, the evidence tended to *support*, rather than to *rebut*, the presumption that the Collins residence was the separate property of Mrs. Collins.

In Ott v. Thurston, 9 Cir., 1935, 76 F.2d 368, 369, the late Judge Garrecht said:

"Another error stressed by appellant is that the judge of the District Court erred in holding that where the evidence introduced before the referee in bankruptcy was conflicting, he was not at liberty to disregard the referee's findings. In that connection, the District Court stated in its opinion: 'The evidence was at least conflicting, the District Court is not at liberty to disregard the Referee's finding [*sic*] for they find sufficient support in the evidence.' *The court was here expressing the general rule of practice on review or appeal.*

" 'It is the recognized rule of the federal courts—*and especially in matters of bankruptcy*—that on review of the decision of a referee, based upon his conclusions on questions of fact, the court will not reverse his findings *unless the same are so manifestly erroneous as to invoke the sense of justice of the court.*' [Cases cited.]" [Emphasis supplied.]

In the instant case, we are unable to understand how "the sense of justice" of the learned Chancellor was offended by the careful and well-documented findings of the Referee.

General Order In Bankruptcy No. 47, 11 U.S.C.A. following section 53, promulgated by the Supreme Court, reads as follows:

"*Order 47. Reports of Referees and Special Masters*

"Unless otherwise directed in the order of reference the report of a referee or of a special master shall set forth his findings of fact and conclusions of law, *and the judge*

*shall accept his findings of fact unless clearly erroneous * * *."*[4] [Emphasis supplied.]

In construing this identical section 164 of the Civil Code, the Supreme Court of California has repeatedly held similar views regarding the weight to be given to the findings of "the trier of fact"— who in the instant case happens to be Referee in Bankruptcy.

In Nichols v. Mitchell, 1948, 32 Cal.2d 598, 606–607, 197 P.2d 550, 555, the Court used the following language:

"Defendants argue that no evidence was introduced to dispel the presumption raised by section 164 of the Civil Code and to establish the community character of the property standing in the name of Mrs. Mitchell. To this end they cite their 'uncontradicted testimony' that the purchase was made upon Mrs. Mitchell's delivery of her securities and the proceeds of a loan negotiated by her as an independent obligation [Case cited], that Mr. Mitchell had nothing to do with the transaction as established by the absence of his name from the papers constituting the escrow for the handling of the sale [Case cited], and that accordingly she, having furnished 'the total consideration for the property,' was properly named the sole grantee in the deed. But the trial court was not concluded by defendants' testimony as to the source of the consideration for the purchase of the property. It was entitled to consider the situation of the parties at the time of the purchase in 1937, the circumstances that may have occasioned the placing of the title in Mrs. Mitchell's name, and the legitimate inferences arising therefrom which precipitated into essential conflict the issue as to the separate or community character of the property. This province of the trial court to resolve 'conflicting evi-

dence or conflicting inferences' and to reach a conclusion that will not be disturbed 'on appeal if some substantial evidence or reasonable inference' lends support thereto [Case cited] was forcefully declared in the recent case of Hicks v. Reis, 21 Cal. 2d 654, at pages 659–660, 134 P.2d 788, at page 790: *'The trier of the facts is the exclusive judge of the credibility of the witnesses.* § 1847, Code Civ.Proc. While this same section declares that a witness is presumed to speak the truth, it also declares that "This presumption, however, may be repelled by the manner in which he testifies, by the character of his testimony * * * or his motives, or by contradictory evidence." In addition, in passing on credibility, the trier of the facts is entitled to take into consideration the interest of the witness in the result of the case. (Citing authority.) *Provided the trier of the facts does not act arbitrarily, he may reject in toto the testimony of a witness, even though the witness is uncontradicted.* (Citing cases.) * * * [As] the court, in Market Street Ry. Co. v. George, 116 Cal.App. 572, 576, 3 P.2d 41, 43, stated: "It has always been the rule that courts and juries are not bound by mere swearing no matter how positive, unless it be credible swearing. It may bear within itself the seeds of its own destruction, as where it is inherently improbable, or its destruction may be wrought from without, as where the person swearing is in some manner impeached. In either case court and jury are entitled to disbelieve the testimony if they choose, and if they do refuse it credence it is of no more effect than if it had not been given. It disappears from the case and the inference opposed to it is no longer contradicated [*sic*].'" (Emphasis added.)"[5]

---

4. See also In re Duffin, D.C.Cal., 1956, 141 F.Supp. 869, 870; 2 Remington on Bankruptcy § 618.1, Page 76 (1956 Edition).

5. See also Fanning v. Green, 1909, 156 Cal. 279, 284–285, 104 P. 308.

Without laboring the point further, we hold that, at the very least, the appellee's evidence was insufficient to rebut the presumption authorized by § 164, supra; namely, that the residence in question was the "separate property" of Mrs. Collins.

6. *Conclusion*

Since we agree with the "judgment of the Referee that there is no credible evidence to overcome the legal presumption of separate property on the part of the wife", we hold that the court below erred in reversing the order of the Referee adjudging Collins to be a bankrupt, and in decreeing Collins "to be not bankrupt".

Accordingly, the order of the District Court is

Reversed.