[Civ. No. 23274.   Second Dist., Div. Three.   Apr. 21, 1959.]

LAWRENCE M. O'CONNOR, a Minor, etc., Respondent, v. THE TRAVELERS INSURANCE COMPANY et al., Defendants; CHARLES B. LONON, Appellant.

Norman E. Carroll for Appellant.

Henry J. Sullivan and Eugene Radding for Respondent.

WOOD (Parker), J.—Action by Lawrence M. O'Connor, a minor, by his guardian ad litem, for a declaration of his rights with respect to the proceeds of two group insurance policies in which his mother, Ruth M. Lonon, was the named insured and he was the named beneficiary.  Ruth was formerly married to Dalton O'Connor.  Plaintiff Lawrence O'Connor is the issue of that marriage. After the termination of that marriage, Ruth married Charles Lonon, a defendant herein.

In July, 1954, while Ruth and Charles were husband and wife, she became an employee of Hansen-Lynn Company, a corporation.  That company had an arrangement with the

Travelers Insurance Company whereby the insurance company issued policies of group life insurance and group accident insurance for the benefit of the employees of the Hansen-Lynn Company. In September, 1954, Ruth became insured under those policies. The amount of her insurance under each policy was $2,500. Her employer paid all the premiums for the insurance directly to the insurance company, and no deductions for such premiums were made from Ruth's salary.

When Ruth became insured, the beneficiary named in the policies was her husband, defendant Charles Lonon. In each policy there was a provision that she had the right at any time to designate a different beneficiary. About November 15, 1955, Ruth designated her son Lawrence as beneficiary in each policy in the place of her husband. She was killed in an automobile accident on May 20, 1956.

The insurance company alleged in its answer, among other things, that it was a stakeholder of the proceeds of the policies, namely, $5,000, and it was ready to deliver the money as directed by the court. Apparently, the $5,000 was deposited in court by the insurance company.

Pursuant to stipulation of the other parties, and pursuant to order of court based on the stipulation, $2,500 of said proceeds was delivered to plaintiff Lawrence. The remainder of the proceeds $2,500, was the amount in controversy between plaintiff Lawrence and the defendant Charles.

The judgment was that plaintiff Lawrence was entitled to the remainder of the proceeds of the policies, and that the clerk of the court should deliver to the plaintiff the said amount of $2,500.

Defendant Charles Lonon appeals from the judgment.

Appellant contends that even though the premiums paid by Ruth's employer were not deducted from her salary, the premiums represented earnings by her during marriage, and as such earnings the premiums were community property; that where premiums on a life insurance policy are paid from community funds, the proceeds of the policy are likewise community property; that under such circumstances neither spouse can dispose of more than one-half of the proceeds of the policy, either by testamentary disposition or change of beneficiary, without the consent of the other spouse; that the evidence shows that the change of beneficiary in the policies herein was without appellant's knowledge or consent and was in contravention of his vested right to half of the community property.

The court found that the allegations of the complaint were true. Some of those allegations were, as follows: That on or about November 15, 1955, Ruth executed a change of beneficiary of said policies, pursuant to which she designated plaintiff Lawrence O'Connor as the sole beneficiary of said policies. That thereafter there was no further change with reference to the designated beneficiary of the policies. That defendant Charles Lonon had full knowledge and was aware that Ruth had changed the designated beneficiary to Lawrence O'Connor on or about November 15, 1955.

The court also found, as follows: The premiums paid on the policies were entirely paid by Ruth's employer as a voluntary contribution by the employer, and said premiums were not attributable to or a part of the earnings of Ruth. The said premiums were not the community property of Ruth and her husband. The policies of term insurance had no paid up or cash surrender value and would have no value whatever if the employment of Ruth had been terminated otherwise than by her death. The proceeds of said policies, payable on the death of Ruth, were not community property of Ruth and her husband.

*Pacific Mut. Life Ins. Co.* v. *Cleverdon,* 16 Cal.2d 788 [108 P.2d 405], was an interpleader action to determine conflicting claims to proceeds of a life income bond. In that case, the bond was issued in 1926 to Helen Cleverdon, as insured, with Susannah Cleverdon as the beneficiary. Helen, who was a teacher, was unmarried when the bond was issued. In 1930 she married W. A. Street, and thereafter she continued her employment as a teacher until her death, in 1936. The controversy was between the beneficiary and the husband. Before and after the marriage she maintained a bank account in her own name and all of her earnings were deposited in that account. All the premiums paid to the insurance company were paid from that account. The husband maintained a separate bank account in which most of his earnings were deposited. He testified that he did not deposit all of his earnings in his bank account, and sometimes he deposited money in her account; at times he borrowed money from his wife, and it was probable that the deposits he made in her account were repayments of the money borrowed; there was no express agreement between them concerning her separate bank account. In that case, the husband asserted that the premiums paid after the marriage were paid from community funds and that he was entitled to a proportionate share of the

proceeds of the bond. The trial court therein awarded a part of the proceeds to the husband. On appeal therein, the beneficiary, as appellant, claimed that the evidence was not sufficient to support the finding that the premiums paid after the marriage were paid from community funds. The court said (p. 791) : ''This claim appears to be well founded. . . . 'While the rule is otherwise in some of the community property states, in California the husband may relinquish to the wife the right to her earnings during marriage without any consideration other than their mutual consent, and her earnings thereupon become her separate estate. Such relinquishment and mutual consent may be shown by evidence of the acts or conduct of the husband, indicating that he did not regard the earnings as community property.' [Citations.] When respondent's [husband's] testimony is reviewed in the light of these authorities, we see no escape from the conclusion that the earnings of the insured [wife], out of which the premiums were paid, were her separate property . . . .'' It was also said therein (pp. 791-792) : ''But appellant [beneficiary] makes the further claim that even if the premiums, paid after marriage, were paid out of community property, said premiums were paid with the knowledge and consent of respondent and he was therefore not entitled to share in the proceeds of the policy. We believe that this claim is equally well founded. It is conceded by respondent that the premiums on this policy were paid by his wife with his knowledge and consent. We believe this fact precludes respondent from successfully asserting a claim to any of the proceeds of the policy as against the beneficiary named therein.'' Also in that case reference was made to cases dealing with the general subject of the right of a surviving wife, as against a named beneficiary, to a part of the proceeds of an insurance policy issued upon the life of the husband where the premiums have been paid by the husband from community funds. It was said therein (pp. 792-793) : ''The reason for the rules established in such cases is that the husband . . . had acted in contravention of the wife's rights. But the reason for the rule ceases in cases, such as the present one, where the acts of the wife were done with the knowledge and consent of the husband and nothing was done in contravention of any of his rights. We therefore conclude that respondent may not now complain and that he is not entitled to share in the proceeds of the policy.''

In the present case, the husband testified that he and his wife did not have a joint bank account; she had her own

bank account, and he had his own bank account; she deposited her earnings in her bank account, and with his knowledge she used her earnings to send money to her boy (plaintiff herein, who is in Kansas) and she paid for part of her clothing; she spent her earnings on herself or her boy, and he (husband) was aware that she was so using her earnings.

In the present case, the facts with respect to the wife's use of her earnings were similar to the facts in the Cleverdon case above referred to. In the present case the acts and conduct of the husband with reference to the wife's earnings were such that the court might have concluded they impliedly agreed that her earnings would not be regarded as community property. As above shown, the employer made no deduction from the wife's salary in paying the premiums, and the court found that the premiums were paid by the employer as a voluntary contribution and they were not a part of the wife's earnings. Even if the premiums should be regarded as a kind of fringe benefit incident to her employment, it would not follow that such a benefit was community property. The acts and conduct of the husband with reference to the earnings the wife actually received in cash would indicate that he would also allow the wife to treat the fringe benefit (which was not cash received) as her own in the same manner as he allowed her to treat her cash earnings as her own. He testified that he knew that she deposited all her earnings in her separate bank account and she spent her earnings for herself and her boy. As above stated, the court found that the husband knew that the wife had changed the designated beneficiary on or about November 15, 1955. According to his testimony, he knew on April 20, 1956, that the beneficiary had been changed. It is implicit, in the finding that the premiums and the proceeds were not community property, that the act of the wife in changing the beneficiary was done with his knowledge and consent and was not in contravention of his rights. The findings are supported by the evidence.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.