[Civ. No. 9256.   Third Dist.   June 16, 1958.]

BERSCELIA CIAMBETTI, Respondent, v. DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL et al., Appellants.

*Assigned by Chairman of Judicial Council.

Edmund G. Brown, Attorney General, E. G. Funk, Assistant Attorney General, William T. Chidlaw and Clayton P. Roche, Deputy Attorneys General, for Appellants.

Henry H. Kilpatrick, Thomas F. O'Hara and J. Clinton Peterson for Respondent.

PEEK, J.—This appeal arises out of an accusation containing two counts filed by the Department of Alcoholic Beverage Control, hereinafter referred to as the department. In Count I plaintiff was charged with having refilled two one-quart bottles of whiskey. Count II charged that plaintiff for some time has not been the sole owner of the business operated by her, but that her husband, James Ciambetti, is a part owner thereof in violation of sections 23300, 23355, 23951, 24040 and 24200, subdivision (c), of the Alcoholic Beverage Control Act.

A hearing officer before whom the matter was heard found both charges to be true and recommended the license be suspended for 30 days on Count I and that it be suspended indefinitely on Count II. The department adopted the recommendations of the hearing officer and plaintiff then appealed to the Alcoholic Beverage Control Appeals Board. The board affirmed the action of the department and thereafter plaintiff filed her petition for a writ of mandate in the superior court. That court enjoined the suspension on Count II and this appeal followed.

The charge contained in Count I, being admitted, we have therefore limited our examination of the record solely to the evidence in support of Count II. Although the accusation contained in Count II was dependent upon evidence of owner-

ship of the license itself, much of the testimony introduced by the department had to do with the property interests of Berscelia and James, apparently upon the theory that such evidence showed an intent to operate a community business. A summary of the evidence in this regard shows that plaintiff and her husband were married in 1945. The real property on which the licensed premises are located was acquired by plaintiff as sole grantee on September 17, 1946. While the record is not clear, it would appear that Berscelia and James operated a restaurant known as the Mint Café on the premises, and that for approximately two years prior to 1951 he had a beer license in his name. On October 23, 1950, plaintiff in her name alone purchased a general on-sale liquor license for the sum of $12,187.10, of which all but $187.10 was paid in cash. And on January 26, 1951, a general on-sale license was issued to her as the sole licensee by the then administrator of the department's Vallejo office. In order to equip the bar, a note and deed of trust was executed on February 17, 1951, by "BERSCELIA CIAMBETTI, a married woman, as her separate property, of the City of Suisun, County of Solano, State of California, and JIM CIAMBETTI, her husband," as trustors. On April 21, 1953, a deed of reconveyance was executed to "BERSCELIA CIAMBETTI, a married woman, as her separate property, and JIM CIAMBETTI, her husband." A second loan was secured in the sum of $12,000. The note and deed of trust was executed by "Jim Ciambetti and Berscelia Ciambetti, his wife." Shortly thereafter a notice of intention to mortgage the equipment in the restaurant and bar was executed by ". . . Jim Ciambetti and Berscelia Ciambetti dba The Mint Café" and the subsequent chattel mortgage was executed by "Jim Ciambetti and Berscelia Ciambetti, his wife." A fire insurance policy on the building was issued to Berscelia. A glass insurance policy was also issued in her name, and likewise a workmen's compensation and employer's liability policy was issued to her as the employer and as an individual doing business as the Mint Café. Joint federal and state income tax returns which were filed by James and Berscelia for the years 1952, 1953 and 1954, showed Berscelia to be the owner of the bar and café and Jim to be the manager. His withholding tax statements for 1952, 1953 and 1954 showed him to have been paid wages by Berscelia. He was a member of the Bartenders and Culinary Workers Union and consistently paid his monthly dues. A joint checking account for the Mint Café showed that for the period from

May 20, 1955, through August 19, 1955, three checks had been signed by Berscelia and 170 by James. The checks were of two types: On one "Mint Café" was printed in large letters and below that "Jim Ciambetti and Berscelia Ciambetti" appeared in smaller letters. On the other checks the only words appearing were "Mint Café, Main Street, Suisun." A neon sign on the premises contained the lettering, "Jimmy's Mint Club."

Agent Pierce of the department testified that on August 29, 1955, he had examined various documents of record in Solano County which were admitted in evidence, and found that the real property, fixtures and equipment of the Mint Café were in the name of Berscelia. He likewise examined their income tax returns which also showed her to be the sole owner and James to be her manager receiving wages as such. He further testified that on the following day he had questioned her regarding her ownership of the Mint Café; that she stated the source of the money to start the business was a $4,000 loan obtained from one Fred Leicke; that to this sum were added funds from a joint savings account of herself and her husband; that she did not know the exact amount obtained from said account and referred him to her accountant. From the accountant he learned that $15,200 had been borrowed on fixtures and equipment of the Mint Café and a prior residence located in Suisun, and that this money was used to build a home and to remodel the Mint Café. She also stated to him that she owned the fixtures and equipment in the café. She further told him she had been suffering from ill health for a considerable time.

A second agent for the department, Ralph Sitts, corroborated much of Pierce's testimony and added that a contract for electrical repairs on December 31, 1951, in the sum of $3,898.25 was executed by the husband alone.

A bartender, formerly employed by plaintiff, was called by the department and testified that Mrs. Ciambetti stated she would hire him but she would have to obtain her husband's approval; that the only orders he received were from the husband; that he saw plaintiff at the premises, and that on a few occasions he had seen her check out at the end of the day.

Berscelia testified that she purchased the real property for $11,000, $7,000 of which was from her own funds, and that her husband gave her some money; that the additional funds needed to start the business were obtained by borrowing money and that her husband gave her some of his earnings; that her

husband had a beer license on the premises for a couple of years prior to 1951; that it was with the consent of the administrator of the Vallejo office that she retained the original neon sign on the premises when her license was issued; that the reason for her husband's name appearing upon the documents evidencing the loans on the premises was that the lenders required that both she and her husband sign the instruments; that she actively participated in the management of the license to the extent permitted by her physical condition; and that she did the hiring and firing, neither of which was done by her husband. She further testified in regard to the bartender called by the department that she had both hired and fired him; that her husband worked at the café two full days a week and part time for the remainder; that checks were issued regularly to him for such work and that she managed the bar whenever physically able to be present. Her testimony concerning her illness was that she had been constantly under a doctor's care for an arthritic condition for the preceding five years. A report dated November 1, 1955, signed by Dr. Tranter, stated that he had treated her since the preceding Spring by giving her cortisone and other remedies by daily injections and frequently twice daily for chronic rheumatoid arthritis with severe secondary anemia, a condition which caused a definite incapacity.

Two additional witnesses, one a newspaper publisher and the other a judicial district judge, were called by plaintiff and testified to acquaintanceship and business dealings with plaintiff during the period in question and that at all times they considered her to be, and dealt with her as, the owner of the licensed premises.

The trial court found certain allegations of plaintiff's complaint to be true and the denials thereof to be untrue. Among the allegations set forth in the complaint which the trial court found to be true was the allegation that "Your petitioner alleges that this Application is one in which the Court is authorized by law to exercise its independent judgment on the evidence, . . ."

It is the board's first contention that by finding that such allegation was true the court exceeded its jurisdiction by reweighing the evidence and hence exceeded the scope of review to be exercised by the superior court, in that its review should have been limited to a consideration of whether or not there was any substantial evidence to support the conclusion of the department. It would appear that whatever term the court

may have used in relation to its action would be wholly immaterial, since if in fact there was no substantial evidence to sustain the determination of the department, the conclusion of the superior court must be affirmed.

Appellants next contend that the finding of the hearing officer which was adopted by the department, i.e., that James was a part owner of the liquor business, was supported by substantial evidence, and therefore the conclusion of the trial court overruling the department must be reversed. The argument in support of such contention is that the department could reasonably infer from the evidence that the motive behind the purchase of the real property in 1946 was to operate a community business. It is next stated that the department could also infer from the purchase of the liquor license five years later in 1951 that this action was likewise in furtherance of the original intent to operate a community liquor business. This is then followed by a detailed discussion concerning the money borrowed after the original purchase of the real property in rationalization of the conclusion reached by the department.

It is the general rule that "... the character of property as separate or community is fixed as of the time it is acquired. The character so fixed continues until it is changed in some manner recognized by law, as by agreement of the parties." (*Garten* v. *Garten,* 140 Cal.App.2d 489, 492 [295 P.2d 23].) "The law will not allow idle presumptions to be indulged in as against a deed delivered and recorded. Facts must be proven from which it is clearly made to appear that the property, in such case, is community property, or the deed will be given effect according to its terms." (*Alferitz* v. *Arrivillaga,* 143 Cal. 646, 649 [77 P. 657].) Here the evidence shows without conflict that the real property was purchased in plaintiff's name as sole grantee, as was the license. Under such circumstances it is the presumption, under section 164 of the Civil Code, that the property so purchased was the separate estate of the wife. It is a strong presumption (*Acme Distributing Co.* v. *Collins,* 247 F.2d 607) and cannot be overthrown except by clear and convincing proof. (*Attebury* v. *Wayland,* 73 Cal. App.2d 1, 5 [165 P.2d 524].) Nor can it be rebutted solely by evidence as to the source of the funds. (*Gudelj* v. *Gudelj,* 41 Cal.2d 202 [259 P.2d 656].) It is the further rule that the money which was borrowed on the credit of such property was also plaintiff's separate estate. The fact that both

spouses joined in the execution of the deeds of trust or mortgages given to secure the notes evidencing the loans did not alter the original status of the property. (*Dyment* v. *Nelson,* 166 Cal. 38 [134 P. 988].) The improvements, even if made by the husband upon the wife's separate property and out of community funds, gave him no interest therein. (*Holtze* v. *Holtze,* 2 Cal.2d 566 [42 P.2d 323].) Nor could the other incidental acts of the husband in relation to the management of the property be considered as acts indicating ownership such as would overcome the presumption. (*Kimbro* v. *Kimbro,* 199 Cal. 344 [249 P. 180].)

It necessarily follows that since the conclusion of the department was based wholly upon inferences drawn from the record and was not supported by substantial evidence, the judgment of the trial court must be affirmed.

The judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.