A. Glendon **JOHNSON**, Administrator
c.t.a. Estate of A. Gales Johnson,
Petitioner,

v.

**COMMISSIONER OF INTERNAL REV·
ENUE**, Respondent.

No. 7874.

United States Court of Appeals
Fourth Circuit.

Argued June 22, 1959.

Decided Sept. 11, 1959.

A. Glendon Johnson, Administrator
c. t. a., pro se.

Kenneth E. Levin, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., and Lee A. Jackson and Melva M. Graney, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before SOPER and HAYNSWORTH, Circuit Judges, and THOMSEN, District Judge.

THOMSEN, District Judge.

This case arises out of the fiduciary income tax returns of the estate of A. Gales Johnson for the fiscal years ended August 31, 1951 and 1952. The principal issues are: (1) the basis upon which depreciation and obsolescence should be

allowed on certain assets which had been included in the estate tax return, and (2) whether certain assets on which taxpayer claimed an allowance for obsolescence were in fact obsolete.

Decedent had been the sole proprietor of a mail-order business selling original house designs prepared by decedent and his staff. Induced by advertisements, prospective customers would request brochures containing pictures and floor plans of a variety of houses. After choosing a particular design, the customer would order from decedent a kit containing detailed blue prints and an itemized list of all materials needed.

At the time of his death in September, 1950, decedent had on hand a large number of booklets and 125 original master plans, from which the blueprints and material lists sold to the customers were prepared. There was no ready market for these materials, and the appraisers who fixed their value for estate tax purposes were of the opinion that the reproduction cost of the master plans represented their fair value at the time of decedent's death. They calculated that the reproduction cost of the 125 plans was $173,055. Accordingly, the value of the 125 plans was reported as $173,055 in the account filed in the probate court and in the Federal estate tax return.

Among the 125 master plans were 25 plans which decedent had dropped from his current brochures between 1947 and 1950. However, these plans were included in old brochures in the hands of the public at the time of decedent's death, and orders for these plans were still being received.

In the fiduciary income tax returns for the fiscal years 1951 and 1952 the administrator removed the 25 discontinued plans from the depreciation base but retained the valuation of $173,055, apportioning that amount over the 100 current plans instead of the 125 plans. He estimated the life of the 100 plans to be 20 years, and on the return for the fiscal year 1951, he deducted the sum of $7,-612.75 for "depreciation—original plan design". This amount is 5% of the ap-

praised value of the 125 master plans ($173,055), reduced by the amount ($20,-800) charged off as obsolescence on 18 plans which petitioner claimed had become obsolete during that fiscal year. He claimed a similar deduction for depreciation on the 1952 return.

The estate tax return and the fiduciary income tax returns were audited by agents of the Internal Revenue Service. The representatives of the income tax division objected to the valuation of the plans at $173,055 as the basis for depreciation, but the representatives of the estate tax division accepted that figure as the value of the 125 plans for estate tax purposes. Efforts to obtain an agreed figure failed.

The Commissioner finally accepted the valuation of $173,055 for the 125 plans for estate tax purposes, but refused to accept that valuation for income tax purposes. Based on the ratio of the sales of the 25 discontinued plans ($22,000) to the total sales of all plans ($280,555.66) for the period September 13, 1950 to December 31, 1952, the Commissioner determined that those 25 plans were worth only 7.84% of the total reproduction cost of all the plans ($173,055), or $13,567.51. This figure is $11,659.99 less than the value ($25,227.50) which had been attributed to the 25 plans in question in the appraisal of the 125 plans for estate tax purposes. The Commissioner, therefore, reduced the depreciation base by $11,-659.99.

Taxpayer challenged in the Tax Court this action of the Commissioner, but after a hearing that Court held that taxpayer had failed to uphold his burden of proving that the Commissioner had erred in his determination.

 It is clear that taxpayer was not justified in reapportioning the $173,055 over the 100 plans instead of the 125 plans; the $173,055 figure had been arrived at by using the reproduction cost of the 125 plans, and the 25 discontinued plans had some value. The more difficult question is whether the Commissioner was justified in his reduction of the valuation of the plans for income tax pur-

poses. The applicable statute provides that the basis upon which depreciation and obsolescence will be allowed is the fair market value of the property at the time of acquisition or, in the case of property acquired from a decedent, the fair market value at the time of decedent's death. I.R.C. of 1939, secs. 23, 113, 114, 26 U.S.C.A. §§ 23, 113, 114. Subsection (c) of Treas.Reg. 111, sec. 29.113(a) (5)–(1), provides in pertinent part: *"Fair market value.*—For the purposes of this section, the value of property as of the date of the death of the decedent as appraised for the purpose of the Federal estate tax * * * shall be deemed to be its fair market value at the time of acquisition." This regulation has been construed to mean that the figure arrived at by such an evaluation is only prima facie correct and may be shown to be erroneous. McEwan v. Commissioner, 2 Cir., 241 F.2d 887, 889.

The valuation of $173,055 for the 125 plans is, therefore, prima facie correct. We must consider whether the method of attack used by the Commissioner shows that valuation to have been wrong.

When the Commissioner undertook to reduce the valuation of the 25 discontinued plans by computing the ratio of the sales of those plans to the total sales of all plans and applying that ratio to the reproduction cost of all the plans ($173,055), which he had accepted as the fair value for estate tax purposes, fairness required that he should increase the valuation of the 100 current plans by the same amount, namely, $11,659.99. The Commissioner's argument that no plan is worth more than its cost of reproduction cannot properly be given effect in these circumstances. The Commissioner has offered evidence tending to prove that the 25 plans were worth less than their cost of reproduction, but the method he has used to arrive at the value of the 25 plans calls for a corresponding increase in the value of the 100 plans. He has offered no other evidence of the value of the 100 plans or of the value of the 125 plans taken together.

The prima facie correctness of the $173,055 valuation for the 125 plans has not been rebutted. The basis for the allowance of depreciation and obsolescence on the 125 plans must remain at $173,-055. But since that amount was not specifically allocated among the plans in the estate tax return, the Commissioner may allocate the $173,055 among the 125 plans according to their reproduction value or may reduce the value of the 25 plans from $25,227.50 to $13,567.51 and allocate the difference of $11,659.99 among the other 100 plans in any reasonable way.

During the fiscal year ended August 31, 1951, the estate deducted $20,800 as "Obsolescence—Original Plan Designs" to cover the value of 18 plans used in the brochures in print at the time of decedent's death, which the administrator had decided were out of favor with the public and should not be carried in any brochures to be published in the future. It appears from the evidence, however, that four of these plans were included in new brochures as alternates for new plans.

The Commissioner disallowed $5,876.-35 of the $20,800 claimed for obsolescence. Of this amount $3,635 had been claimed as the value of the four plans which were still being included in the new brochures. The Tax Court correctly ruled that taxpayer has failed to meet the burden resting on him to show that the disallowance of the $3,635 was not correct.

The remainder of the amount disallowed ($2,241.35) represented that portion of the value of the 25 discontinued plans which had been apportioned by taxpayer to the 18 allegedly obsolete plans when he apportioned the value of the 25 discontinued plans among the 100 remaining plans, including the 18. Some part or all of the $2,241.35 was properly disallowed; the exact amount of the disallowance will depend upon whether the Commissioner (a) apportions the $173,-055 valuation among the 125 plans in accordance with their cost of reproduc-

tion or (b) reduces the valuation of the 25 discontinued plans by $11,659.99 and distributes that amount among the 100 remaining plans, pro rata or in some other reasonable way. Only such part, if any, of the $11,659.99 as may be allocated to the 14 obsolete plans (18 less 4) may be added to the obsolescence allowance for those 14 plans.

The case will be remanded to the Tax Court for further proceedings not inconsistent with this opinion.

Affirmed in part, reversed in part, and remanded.