**ESTATE of J. Leslie VOGEL, Robert G. Partridge, and Elizabeth S. Vogel, Executors, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 16304.

United States Court of Appeals
Ninth Circuit.

March 25, 1960.

As Amended May 25, 1960.

Grant G. Calhoun, Richmond, Cal., for appellants.

Charles K. Rice, Asst. Atty. Gen., John J. Pajak, Robert N. Anderson, Lee A. Jackson, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before STEPHENS, POPE and KOELSCH, Circuit Judges.

STEPHENS, Circuit Judge.

The estate of J. Leslie Vogel, deceased, pending in the California Probate Court, has petitioned us for review of a decision of the tax court approving a deficiency determination made by the Commissioner. The principal question is whether or not all of the property left by the decedent, plus certain property standing in his wife's name, was community property. The Commissioner and the tax court have held that it was.

I.

It is undisputed that all of the property owned by the Vogels was community before the year 1943. On January 1, 1943, in order to admit his son to the business, and avoid the excess profit tax, the corporation through which Mr. and Mrs. Vogel ran their business was dissolved, and a limited partnership was formed. Each partner, Les, the husband, Elizabeth, the wife, and Les, Jr., had a separate drawing account. The only charges made to Elizabeth's account were for income taxes, a $100.00 monthly allowance, and a $500.00 monthly payment on their residence. Taxes on this home were charged to the decedent.

On November 1, 1946, the business was again incorporated, the shares being equally divided between the three partners. A single drawing account for Mr. and Mrs. Vogel was set up. On October 31, 1947, the balance in this account was divided into two equal parts of $11,662.-05. One part was deposited in the name of Elizabeth Vogel in a savings account, in which some of decedent's salary checks were also deposited, although they were later transferred to a checking account. The other part was deposited in a savings account in the name of Les or Elizabeth Vogel, into which account most of Les' salary checks were deposited. Separate brokerage accounts were started by Les in 1946, and Elizabeth in 1948. Purchases by Les were charged to his partnership account prior to October 31, 1946, and to their joint drawing account thereafter. Elizabeth's purchases were paid for from the checking account.

In 1950, the Anzavista Apartments were purchased by Elizabeth. However, she told an internal revenue agent after the decedent's death that the apartments, and all other property either of them had, belonged to both.

Up until the decedent's death, income tax returns treated all income and gains as community property, although the accountant who prepared the returns could not remember discussing the nature of the property with the decedent.

The decedent's will, executed December 13, 1946, stated that all the property in which he had an interest, plus that which stood in his wife's name, was community property. A second, unsigned will which had been prepared for the decedent referred to a transmutation agreement. Testimony given by Mr. Vogel's attorney shows that the decedent thought at the time he prepared his first

will, that there had been a transmutation in January, 1943. Elizabeth Vogel was never asked during the trial whether there had ever been any transmutation agreement.

■ This evidence furnishes some support for the contention that the property standing in the name of Mrs. Vogel was her separate property. In California, community property can be converted into separate property by an oral agreement. Tomaier v. Tomaier, 23 Cal. 2d 754, 146 P.2d 905. And there is a disputable presumption that property acquired by a married woman by an instrument in writing is her separate property. California Civil Code, § 164. There is also the testimony of the attorney that Mr. Vogel believed their property had been divided in 1943, and the second unsigned will. (The fact that the wife had legal title to interests in the partnership and corporation is of little significance. Tomaier v. Tomaier, supra.)

■ But there is also evidence which points the other way. The decedent in his will stated that all his property, plus all that which stood in the name of his wife, was community property. Elizabeth told an internal revenue agent the same thing. And in her testimony, she was never asked whether there had ever been a transmutation. The income tax returns treated all their property as community. There were at least two independent business reasons for dissolving the corporation in 1943, and forming a partnership. And when the partnership was dissolved in 1946, funds were commingled, to a certain extent.

In short, the petitioner has failed to meet the burden of showing that the determination made by the Commissioner was wrong.

## II.

■ The Tax Court granted a family allowance deduction of $1,000 a month, instead of the $1,500 a month claimed by the estate. It is undisputed that prior to the decedent's death, most of his $1,800 a month salary was used to maintain his home. However, his two adult children lived at home free of charge.

At the time of decedent's death, the Internal Revenue Code of 1939, Section 812(b) (5), 26 U.S.C. § 812(b) (5) (1946 ed.), provided that expenses for a family allowance could be deducted from the gross estate in computing the value of the net estate where they are reasonably required and actually necessary, and where they are allowed by the laws of the jurisdiction under which the estate is administered. California does not permit a family allowance for the support of adult dependents unless they are incompetent. California Probate Code, § 680. And no showing has been made that $1,000 a month is not a reasonable sum for the support of the wife, where $1,800 a month sufficed to support the husband and wife, and two adult children.

## III.

■ Claimed deductions for attorney fees incurred in contesting the deficiency notice, and for all the funeral expenses, rather than one-half, were not considered by the Tax Court because they were not claimed until the parties attempted to decide the amount of tax due after the Tax Court had decided that all of the property involved was community property. Rule 50, Rules of Practice of the Tax Court, 26 U.S.C.A. § 7453. It is well settled that no new issues may be raised in a Rule 50 computation. See e. g., Bankers' Pocahontas Coal Co. v. Burnet, 287 U.S. 308, 312–313, 53 S.Ct. 150, 77 L.Ed. 325. While such rules should not be so rigidly enforced as to defeat the ends of justice, see Hormel v. Helvering, 312 U.S. 552, 61 S.Ct. 719, 85 L. Ed. 1037, no reason has been advanced in this case for making an exception.[1]

1. With respect to the failure to raise the issue of a deduction for attorney fees, we note that Treasury Regulation 105, for the 1939 Internal Revenue Code, provides as follows:

"Sec. 81.34 [As amended by T.D. 5596, 1948–1 Cum.Bull. 127] Attorneys fees.— The executor or administrator, in filing the return, may deduct such an amount of attorneys' fees as has actually been

The judgment of the Tax Court is affirmed.

POPE, Circuit Judge.

I concur. I have been bothered here about the application of § 164, Cal.Civ. Code. Apparently the presumption of this section, that "property * * * acquired by a married woman by an instrument in writing * * * is her separate property" cannot be rebutted solely by evidence as to the source of the funds. Ciambetti v. Department of Alcoholic Beverage Control, 161 Cal.App.2d 340, 326 P.2d 535, 538; Gudelj v. Gudelj, 41 Cal.2d 202, 259 P.2d 656, 662.

So far as the certificates of stock in the name of the wife are concerned, I would think it proper to hold that those certificates are, like a certificate of registration of an automobile, not "an instrument in writing" within the meaning of § 164. Pacific Telephone & Telegraph Co. v. Wellman, 98 Cal.App.2d 151, 219 P.2d 506, 509–510; In re Inman's Estate, 148 Cal.App.2d 952, 307 P.2d 953, 957.

Aside from the shares of stock involved here, there was the Anzavista Apartments property.[1] The land where these were built was deeded to the wife by an instrument plainly within § 164. Contrary to the suggestion of the Tax Court, there is plain evidence from the son that the funds for acquisition of the apartments came from earnings of Vogel Chevrolet Company, admittedly community funds.

There was other evidence, besides the source of the funds, to support the findings of the Tax Court and of the Commissioner. I cannot find anything in decedent's will bearing on the issue here. But the wife had told the revenue officers, as to the apartments, in her son's presence, "It's all Dad's. You know it is." On the trial she said of this conversation that she said the apartment house "was the whole family's."

The income tax returns of both husband and wife showed that all income was evenly divided between them. Those returns were competent evidence of an agreement between husband and wife concerning the nature of the property. Nevins v. Nevins, 129 Cal.App.2d 150, 276 P.2d 655, 661. I am satisfied there was abundant evidence to support the findings.

paid, or in an amount which at the time of such filing it is reasonably expected will be paid. If on the final audit of a return the fees claimed have not been awarded by the proper court and paid, the deduction will nevertheless, be allowed, provided the Commissioner is reasonably satisfied that the amount claimed will be paid and that it does not exceed a reasonable remuneration for the services rendered, taking into account the size and character of the estate and the local law and practice. If the deduction is disallowed in whole or in part on final audit, the disallowance will be subject to modification as the facts may later require.

A deduction for attorneys' fees incurred in contesting an asserted deficiency or in prosecuting a claim for refund should be claimed at the time such deficiency is contested or such refund claim is prosecuted. A deduction for such fees shall not be denied, and the sufficiency of a claim for refund shall not be questioned, solely by reason of the fact that the amount of the fees to be paid was not established at the time that the right to the deduction was claimed."

1. The property and the values, as added to decedent's gross estate by the Commissioner, and the Tax Court, were as follows:

| | |
|---|---|
| 4 shares of Pacific Turf Club stock | $1700.00 |
| 500 shares Pacific Gas & Electric redeemable first preferred stock | 7156.25 |
| 467 shares Bank of America stock | 6333.69 |
| 217 shares Pacific Gas & Electric Common stock | 3499.13 |
| 250 shares Leslie Financing Company (family corporation) | 5627.62 |
| Anzavista Apartments property | 8800.00 |
| Savings Account, Marina Branch of Bank of America | 1181.74 |