Estate of A. Gales Johnson, A. Glendon Johnson, Administrator, c.t.a. v. Commissioner.
Estate of Johnson v. Commissioner
Docket No. 61525.
United States Tax Court
T.C. Memo 1961-205; 1961 Tax Ct. Memo LEXIS 145; 20 T.C.M. (CCH) 1032; T.C.M. (RIA) 61205; July 12, 1961
*145 A. Glendon Johnson, 2524 L St., N.W., Washington 25, D.C., for the petitioner. Charles P. Dugan, Esq., for the respondent. KERN Supplemental Memorandum Findings of Fact and Opinion KERN, Judge: This case is before us again upon remand of the Court of Appeals for the Fourth Circuit. The mandate of that Court was accompanied by an opinion reported at 284 F. 2d 357. A hearing was held pursuant to the mandate on March 1, 1961.[1]
At the hearing under Rule 50 pursuant to the mandate of the Court of Appeals, accompanied by its opinion reported at 270 F. 2d 134, we were of the opinion that any issue relating to accelerated depreciation of the 25 plans dropped from the taxpayer's brochures was one raised for the first time in the Rule 50 proceedings, and that we were foreclosed from considering it by the provisions of Rule 50(c). The substance of the opinion *146 of the Court of Appeals reported at 284 F. 2d 357 is as follows: We do not believe that consideration by the Tax Court of taxpayer's contention with respect to the 25 plans was foreclosed under the circumstances of this case. Hormel v. Helvering, 312 U.S. 552, 557; Polizzi v. Commissioner, 6 Cir., 247 F. 2d 875. Cf. Vogel's Estate v. Commissioner, 9 Cir., 278 F. 2d 548, 550; Romm v. Commissioner, 4 Cir., 255 F. 2d. 698. In the income tax returns which he filed for the years 1951 and 1952 taxpayer had erroneously distributed among the other 100 plans that part of the $173,055 basis which was properly allocable to the 25 plans in question, and had treated the 4 plans as having become obsolete in 1951. In his petition for redetermination and at the original hearing before the Tax Court he sought to sustain that action. He offered evidence of the sales of the 25 plans and of the 4 plans, and the Tax Court made findings of fact with respect to such sales, although it denied taxpayer's contentions and held that he had failed to uphold his burden of proving that the Commissioner had erred in determining depreciation. Taxpayer *147 raised the question of accelerated depreciation at the Rule 50 computation hearing, and argued that question, albeit somewhat confusedly, in his brief to this Court on his first appeal. We did not decide or discuss the question of accelerated depreciation on the 25 plans, and did not intend by our decision and mandate to foreclose the consideration of any question which we did not decide. Since, under our mandate, the 25 plans are being treated differently from the way they were treated either by taxpayer or by the Commissioner and the Tax Court, the question of the proper rate of depreciation to be applied to those plans should be decided on the merits, after considering all the facts, in order to work out a just result in this difficult situation, even though a large part of the difficulty was created by taxpayer himself. The same considerations do not apply to the 4 plans; the action of the Commissioner with respect to those plans was sustained on the first appeal. The case will be remanded to the Tax Court for further proceedings not inconsistent with this opinion. It is apparent that the only question now before us is "the proper rate of depreciation to be applied to those *148 [25] plans." Petitioner's contention that we can at this point in the proceeding take any action with regard to "the 4 plans" referred to above is without merit. The Court of Appeals has directed us to determine the proper rate of depreciation with regard to the 25 plans "on the merits, after considering all the facts." At the hearing held pursuant to the mandate on March 1, 1961, petitioner was asked by us whether he had any testimony to give with regard to the matter of the depreciation of the 25 plans. He answered (Tr. p. 20): "I know of none that is needed that isn't already in the record and according specifically to your findings of facts." Looking to the record of the original hearing herein we find little in the testimony of the witnesses which would be helpful in the determination of the proper rate of depreciation for these rather unusual properties, the 25 plans for houses here involved. Petitioner's witness Morgan on direct examination (Tr. p. 21) testified, with regard to the 25 plans dropped from current publication in the brochures of the business, as follows: * * * they were included [in the valuation of the plans for estate tax purposes] because while *149 they were not in current plan books, that didn't mean we would not sell or we would not receive orders for those plans. Therefore, they were just about as valuable to us as plans shown in our current plan book at the time. When asked as to "the expected life of a plan once it has achieved public acceptance," this witness testified also on direct examination (Tr. p. 24): It would be a question of in how many books that plan was shown, how the books were distributed, what kind of distribution. It would be hard to answer a question like that. Petitioner's witness Hite was asked on direct examination why the 25 plans were included in the original valuation. He answered (Tr. p. 34): "Well, at that time those plans, we were getting sales for those plans and we were not in a position of foreseeing the future." Also on direct examination (Tr. p. 43) this witness was asked by the petitioner the following question: Once a plan had proven that it was popular, was acceptable, was there anything in the books or hunches, or anything that could tell you how long such a plan was going to last? To this question he gave the answer "[nothing.]" When asked concerning the average life of *150 a plan this witness answered (Tr. pp. 44-45): "An average life, sir, I don't know I could answer that qualified, no, sir." This testimony indicates the difficulty incident to the problem referred to us by the Court of Appeals of determining the proper rate of depreciation to be applied to the 25 plans. However, there are certain facts which we have already found in our Memorandum Findings of Fact and Opinion which indicate that the useful life of plans dropped from current publication became less than before being dropped. These facts have to do with the number of sales of such plans after having been dropped from publication. These facts, if they had been available, would have been pertinent to a reasonable man attempting to make a realistic estimate of the period of economic usefulness remaining in the plans so dropped. However, such an estimate must be made upon the conditions known to exist at the end of the periods for which the returns are to be made. See Regulations 111, section 29.23(1)-5. Unfortunately, we do not have any testimony as to any such estimates made by any man, reasonable or otherwise, nor could they have been made as of the end of the periods for which the *151 returns were to be made since the facts were not then available in their entirety. In our opinion facts occurring later cannot be considered by us any more than by the hypothetical estimator. See Philadelphia Quartz Co., 13 B.T.A. 1146. However, it is our opinion that a reasonable man making a realistic estimate of the useful life of such plans, who knows that they have been dropped from publication, might well anticipate some such results or facts even though necessarily inexact and conjecutral. See Massey Motors v. United States, 364 U.S. 92. See also James Couzens, 11 B.T.A. 1040, 1165. In an earnest attempt to comply with the mandate of the Court of Appeals and in the heartfelt hope of putting an end to this troublesome litigation, we have concluded and hereby find as an ultimate conclusion of fact that the useful life of those plans after they were dropped from publication was 5 years, and that the proper rate of depreciation during the taxable years was 20 percent. In doing so it is obvious that we have assumed the role of an estimator, but we point out that that role has been forced upon us. The parties hereto are hereby directed *152 to file computations pursuant to this Supplemental Memorandum Findings of Fact and Opinion necessary to the entry of a Decision under Rule 50. Footnotes
1. For background concerning the problem presented see our original Memorandum Findings of Fact and Opinion filed herein on June 30, 1958 [T.C. Memo. 1958-126], and the opinion of the Court of Appeals for the Fourth Circuit in a previous appeal reported at 270 F. 2d 134↩.