**In re the Marriage of Dorothy and Buford DODD.**

**Dorothy DODD, Petitioner-Respondent,**

v.

**Buford DODD, Respondent-Appellant.**

**No. 36464.**

Missouri Court of Appeals,
St. Louis District,
Division One.

Jan. 13, 1976.

Shaw & Howlett, Joseph Howlett, Clayton, for respondent-appellant.

Hanks, Taylor & Suddarth, Claude Hanks, Clayton, for petitioner-respondent.

DOWD, Judge.

The husband appeals the trial court's dissolution of marriage decree as it relates to the awards of maintenance and child support, and the distribution of marital property.

The wife filed suit for divorce on February 14, 1973, after twenty-seven years of marriage. The husband answered and then filed a cross-bill for divorce. Since the judgment was not rendered prior to January 1, 1974, the proceedings are governed by the new Missouri dissolution of marriage statute, §§ 452.300–.415 RSMo Supp.1973.

Defendant contends that the wife was not entitled to an award for maintenance and that the awards for maintenance and support are excessive.

The couple have four children,[1] two of whom, sons born in 1956 and 1966, reside with the wife at the family home. The

---

1. Two children are emancipated.

parties stopped living together as man and wife in late February, 1973, and they no longer resided together after July, 1973.

The husband, age 46 at the time of the hearing, had been employed as a sales representative for about ten years. Receiving all his income from his employer, his annual income averaged almost $14,000 for the years 1970–72. His 1973 income was increased by a $500–$600 bonus. His employer gave him a $400 raise in 1974.

The husband participates in two company savings plans. The first plan, hereinafter called "the savings plan," is designed to supplement his retirement pay. The second plan is a stock option program.

The transcript and the appellate briefs do not clearly present the details of these two plans, but it appears the husband has participated in the savings plan for seven years, contributing 5% of his gross income, presently $55 per month. The value of the fund, which is invested in company stock, was almost $9700 as of September 1972; at that time the husband had contributed almost $4400, and the company about $1700. By the time of the hearing the husband's contributions totalled $5300. The plan is payable upon retirement, but the husband's contributions can be withdrawn presently, and the employer's contributions after ten years of participation.

The husband contributes about $33 per month to the stock option program, which began in 1972 or 1973. Deductions from the husband's gross salary are made for five years and held for the future purchase of stock. No evidence was presented concerning the present availability of that money to the husband.

The parties' home, presently occupied by the wife and the two minor children, has an estimated market value of $24,000–30,000, subject to a $12,000 mortgage. The husband and his brother own a home in which their mother resides as life tenant, but the husband does not pay for the mortgage on this house.

The parties' 1969 Chevrolet, valued at $500, is fully paid for and is used by the wife. The husband drives a leased company car.

In early 1973 the wife withdrew about $6000 from a savings account held jointly with the husband. She spent about $1200 of this sum for attorneys fees, the remainder for necessaries for herself and the children. The $6000 was entirely spent by the time of the hearing. The husband later withdrew the remaining $1000 from the joint savings account.

The wife, age 45 at the hearing, has an eighth grade education and no job training or job skills. During her marriage she had been exclusively a homemaker until 1972, when she worked for a nursery school about twenty-five hours per week at $1.70 per hour. The wife discontinued this nursery school work in 1972 but she began work again at the same school in December 1973, receiving a net monthly income of $138.

Since December 1973 health problems caused her to miss several days of work, and in May 1974 she had to quit her job due to illness. The wife, who has been under a physician's care, complained about severe stomach cramps, fevers, poor bladder control and shortness of breath. These ailments have limited her ability to do housework, but she is still able to care for her two minor sons.

The husband contends his net monthly income is $830. The wife's Income and Expense Statement, filed in March 1974, listed regular monthly expenses of $387, personal monthly expenses of $215, and childrens' expenses of $355—for a total of $957 per month.

The court dissolved the marriage, finding it irretrievably broken. The wife was awarded custody of the two minor children, together with child support of $200 per

month. The wife was also awarded $200 per month for maintenance.

The husband was ordered to pay the wife $500 for the latter's attorneys fees. The wife received the family home (subject to the mortgage), plus all its contents except for electrical tools and a color television set. The wife received the 1969 Chevrolet. The husband retained his tenancy-in-common interest in his mother's home.

Before reviewing the husband's appellate contentions, we note that our review in a dissolution of marriage case is the same as it was in a divorce case. The appellate court must review the case de novo upon both the law and the evidence, giving due deference to the trial court's assessment of the credibility of the witnesses. *In re Marriage of Powers,* 527 S.W.2d 949, 954 (Mo. App.1975).

The husband first contends the trial court erred in awarding the wife maintenance because there was no evidence to support the award under the statutory criteria. We disagree.

§ 452.335(1) permits a court to award maintenance only if the spouse seeking maintenance:

"(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

"(2) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home."

The husband concedes the first requirement is present in this case. Since there was no evidence at the hearing whether or not the wife was the custodian of a child whose condition or circumstances made it appropriate that she not seek employment, our inquiry must center on whether the wife was able to support herself through appropriate employment.

We believe the wife cannot be expected to support herself through employment. She was 45 years old at the hearing. During the first 27 years of the marriage she had worked exclusively as homemaker. Only during the last two years of the marriage had she been employed part-time at the nursery school, never netting more than $138 per month. The wife has only an eighth grade education, with no job training or job skills.

The wife's illness forced her to quit work a month before the hearing, and it is not clear from the transcript whether she even had a job to which she could return. Her illness seems to be of a lingering type, and it is uncertain whether she will regain her health so as to be again able to seek employment. Finally, we note that the wife's March 1974 estimated expenses were $387 household expenses (including $167 for mortgage payments) and $215 personal expenses, for a total of $602. The husband has not challenged the types and amounts of these expenses.

The husband's second contention is that both the $200 monthly maintenance award and the $200 monthly child support award were excessive, since they equal almost half of the husband's $830 monthly net income.

Section 452.340 lists some relevant (non-exclusive) factors the courts must consider in awarding child support:

"(1) The father's primary responsibility for support of his child;

(2) The financial resources of the child;

(3) The financial resources of the non-custodial parent;

(4) The standard of living the child would have enjoyed had the marriage not been dissolved;

(5) The physical and emotional condition of the child, and his education needs; and

(6) The financial resources and needs of the noncustodial parent."

We find that the amount of the award of child support was not excessive. There is no evidence that the two minor children had any independent financial resources. The wife's financial resources, including the equity in the home and any future employment, clearly are insufficient to adequately support her two growing sons, whose estimated March 1974 monthly expenses were $355. The standard of living enjoyed by the children during the marriage was not one of luxury, and the standard of living will not be better after the dissolution. The one child was only eight years old at the time of the hearing, so he will require another ten years of primary and secondary education. Finally, we do not believe the child support and maintenance awards outstrip the husband's ability to pay, especially (as we comment below) since his net monthly income does not include about $90 of voluntary payroll deductions for his two savings plans. See *C. E. McM. v. A. V. McM.*, 506 S.W.2d 14, 16 (Mo.App.1974); *Larison v. Larison*, 524 S.W.2d 159 (Mo.App. 1975).

■■■ § 452.335(2) lists several (non-exclusive) relevant factors for a court considering a maintenance award:

"(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) The standard of living established during the marriage;

(4) The duration of the marriage;

(5) The age, and the physical and emotional condition of the spouse seeking maintenance;

(6) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance; and

(7) The conduct of a party seeking maintenance during the marriage."

We find the amount of the maintenance award in this case was not excessive. The marriage lasted 28 years. The maintenance award most probably will not enable the wife (or husband) to equal the standard of living attained before the dissolution. We have already noted the 45-year-old wife's poor physical health, limited formal education, and dim employment prospects. The marital property apportioned to the wife—the automobile, the home (subject to the mortgage), and the home furnishings—are not income producers. The husband testified concerning some alleged marital misconduct by the wife, but the evidence of the husband's alleged misconduct was at least as strong. Finally, as noted above in the discussion of the child support award, we believe the husband can financially bear the maintenance payments.

■■ The husband's final contention is that the trial court's apportionment of the marital property was inequitable, since the wife received 95% of all their property.

This 95% figure is misleading. The husband says the court "awarded" the wife $6000 of the $7000 their joint savings account once contained. But the evidence tends to show the wife withdrew this sum in early 1973, after the husband had stopped giving her and the children adequate financial support. During the remainder of 1973, the wife used $1200 of the amount for attorneys fees, and the remainder to purchase necessaries for herself and the children. The husband does not question how she spent the money.

The husband also has failed to list among his financial resources the value of the two savings programs to which he voluntarily contributes every month.

After carefully considering § 452.330, we find the disposition of marital property was equitable.

Affirmed.

WEIER, P. J., and RENDLEN, JJ., concur.