Marvin L. STARK, Petitioner-Appellee,

v.

Evelyn C. STARK, Respondent-Appellant.

No. KCD 27879.

Missouri Court of Appeals, Kansas City District.

Aug. 2, 1976.

C. John Forge, Jr., Hencke & Forge, Independence, for petitioner-appellee.

Robert M. Hill, David H. Miller, Hill, Hill & Busch, Charles H. Sloan, Richmond, for respondent-appellant.

Before SHANGLER, P. J., and SWOFFORD and SOMERVILLE, JJ.

SHANGLER, Presiding Judge.

This appeal comes from Evelyn C. Stark from a decree which dissolved her marriage to Marvin Stark. The judgment also made division of the marital property, allowed the wife maintenance, awarded her custody of the two minor children, money for their support and attorney fee. The wife challenges here the reasonableness of the distri-

bution of the marital property and the adequacy of the maintenance and child support awards.

The parties were married on April 23, 1961, and about a year later removed to an 85 acre farm which the husband had purchased in 1957 for $15,000. At that time be borrowed $10,000 to apply to the purchase price and still owed $6,000 at the time of marriage. Title to the farm was taken in his name and so retained throughout the marriage. The husband also brought tools and machinery worth $2170 to the marriage. He has been employed since 1954 as a supervisor at Armco Steel Co., earning a gross salary of $19,455 the year immediately preceding the dissolution action.

After the parties removed to the farm, they began to build a new home, and in 1965 incurred joint liability on a $18,000 loan and mortgage. This money was used to discharge all his old debts [and included, presumably, the prior mortgage encumbrance which had stood in the name of the husband alone] and also to finance construction of the new home on the farm. The husband contended that his wife was of little help in the enterprise and that he did most of the work himself. She insisted that she was a co-worker at every phase of construction, and thus made a significant contribution to the undertaking. The house was completed and served as the family residence until they separated in 1974.

It was the contention of the husband that the marriage failed because she constantly berated him in front of the children and eventually turned them against him. The wife complained of physical abuse by the husband and of nocturnal forays from which he did not return until early morning.

The wife raises four points of trial error on this appeal: (1) failure to make and enter written findings of fact and conclusions of law as to the four factors constituted by § 452.330(1), RSMo Supp.1975, as relevant on the judicial disposition of marital property; (2) the unjust allocation to her of marital property; (3) the inadequacy of the maintenance award; (4) the inadequacy of the child support award.

As to the first issue, neither party requested findings of fact nor conclusions of law, and none were provided. The wife here contends that § 452.330, which directs the judicial disposition of marital property upon dissolution, impliedly requires such findings. That section directs the trial court at the division of marital property to consider all relevant factors, to include

1. The contribution of each spouse to the acquisition of the marital property;
2. The value of the property set aside to each spouse;
3. The economic circumstances of each spouse at the time the division of the property is to become effective;
4. The conduct of the parties during marriage.

While we exhort the trial bench, as an aid to appellate review, to explain the facts upon which the adjudication directed by § 452.330(1) rests, Rule 73.01(d) [then in effect] and current Rule 73.01(2)(a) impose no duty for findings of fact or conclusions of law in the absence of specific request by counsel. In that event, all fact issues are considered found in accordance with the result reached by the court. *Noland v. Noland*, 527 S.W.2d 696, 698[1] (Mo.App.1975). Nor can the prescription of § 452.330 that the court consider all relevant factors in the allocation of marital property be understood to imply a requirement—even in the absence of request—that a judge give a statement of reasons for the adjudication. The power of the supreme court to establish rules of practice and procedure is conferred by constitution. A rule so promulgated may be annulled or amended by the Legislature only by an enactment limited to that purpose. Article 5, § 5, Missouri Constitution of 1945. It is not the design of § 452.-330 to amend or annul Rule 73.01. The point is denied.

The wife next contends that the marital property was unjustly allocated. In particular, she argues that the 85 acre farm on which they dwelt had become, by their com-

mon understanding, marital property and should have been dealt with accordingly. The court awarded the wife

1. $15,000 in cash
2. household furniture valued at $4145
3. a 1973 Oldsmobile valued at $3200

and to the husband

1. the 85 acre farm valued at $42,000 and subject to a $5229 encumbrance
2. all the cattle of the value of $1500 and subject to a $4160 encumbrance
3. farm machinery and tools valued at $4585
4. three antique automobiles valued at $2100
5. a pickup truck valued at $1925
6. all (269) shares of stock in Armco Steel valued at $5111.

The new divorce Reform Act provides that in a proceeding for dissolution of marriage the court shall first set apart to the spouses the separate property of each and then divide the marital property as the court determines just after consideration of all relevant factors. § 452.330(1). The act defines marital property to mean all property acquired by either spouse subsequent to the marriage, with certain exceptions. § 452.330(2). The act also presumes that property acquired by either spouse subsequent to marriage to be marital property regardless of how title is held. § 452.330(3). This presumption may be overcome by proof that the property was acquired in exchange for property acquired prior to the marriage. § 452.330 2.(2).

The order of property division entered by the trial court did not differentiate between separate property and marital property within the definitions of the act.

It is the contention of the wife that the house and farm should be considered marital property to the full market value [$42,000 less the encumbrance], and when so considered, the allocation to her of 38% of the total property is so disproportionate as to result in an abuse of discretion.

The husband replies that the farm represents property acquired by him prior to the marriage and the dwelling house—a replacement of the original structure—represents property acquired in exchange for property acquired by him prior to marriage, and as such neither the farm nor house constitutes marital property within the definition of §§ 452.330 and 452.330 2.(2).

The contention of the wife that the acreage became marital property by common understanding with the husband comes unadorned and unproved except for the effect to be given the evidence that the property was encumbered after the marriage, the mortgage and note of indebtedness given in the names of both spouses, and repayment made from community property. For purposes of the division of marital property under § 452.330, all property acquired by a spouse prior to the marriage and which remains titled in that spouse after marriage is, in the absence of clear intention to contribute that property to the community or to the other spouse, the separate property of that spouse and will not be regarded as marital property. *Conrad v. Bowers,* 533 S.W.2d 614, 624[20] (Mo.App.1975). The character of a separate property is not altered because one spouse joins in a mortgage obligation on the separate property of the other. *Hogevoll v. Hogevoll,* 59 Cal.App.2d 188, 138 P.2d 693, 697[6] (1943); *Shovlain v. Shovlain,* 78 Idaho 399, 305 P.2d 737, 739 (1956). It is altogether consistent to assume that the $18,000 loan and mortgage, although taken as a joint obligation, issued upon the faith and credit of the separate property which secured the transaction. There is no evidence that the joint mortgage was intended to create a new estate between them and in the absence of such proof, the transaction did not change the separate title of the husband into community property. *Kenney v. Kenney,* 128 Cal.App.2d 128, 274 P.2d 951, 958[22] (1954); *Ciambetti v. Department of Alcoholic Beverage Control,* 161 Cal.App.2d 340, 326 P.2d 535, 538[1–4] (1958); *Conrad v. Bowers, supra,* l. c. 624[20].[1] These au-

---

1. The recent decision by the Springfield District of the Missouri Court of Appeals is tangential to the issue here. *Cain v. Cain,* 536 S.W.2d 866 874[4, 5] (Mo.App.1976) holds that

thorities comport with the general principle given in 42 C.J.S. Husband and Wife § 583 that once an estate has acquired the status of separate property of one of the spouses, the status remains unchanged regardless of the nature of the funds which thereafter satisfy the obligation of the indebtedness thereon, whether community funds or separate funds of the other spouse.

■ We have concluded that the evidence allows no other determination than that the farm acreage came into the marriage as a separate property of the husband, remained so, and must be considered set apart to him. The issue remains, however, whether the increase in the value of the farm subsequent to the marriage should be allocated to the marital property. The husband purchased the farm for $15,000. After the marriage he spent about $12,000 from the joint mortgage funds to construct a dwelling place, cattle shed and hay storage barn. At the hearing, the husband attributed a worth of $42,000 to the farm and improvements. It is inescapable from the evidence that this increased value resulted from the improvements constructed on the farm after the marriage with marital funds. The argument of the husband that the entire $42,000 value must be excluded from the marital property on the premise that the new dwelling represents property acquired in exchange for property acquired prior to the marriage falls because there is no evidence of an exchange; title to the farm remained in him throughout the marriage. We have rejected as well the contention of the wife that the entire $42,-000 value be accounted as marital property, for the evidence shows no clear intent by the husband to contribute the entire farm to the marriage.

The answer to these contentions is found in the plain wording of § 452.330(2)(5) which excludes from marital property "[t]he increase in value of property acquired prior to the marriage." Thus, the farm property as augmented in value by

the improvements during the marriage is set aside to the husband as his separate property. That the separate farm property of the husband was improved by the enterprise of the wife and by the use of marital funds, however, are factors which influence the division of the marital property under § 452.330. For in that allocation, the relevant factors for consideration by the court include "[t]he value of the property set apart to each spouse." [This entire subject is treated with fastidious scholarship in *Cain v. Cain, supra.*]

■ On this analysis, the decree of the trial court accords effect to the requirements of statute. The award to the wife of property $22,345 in value allocates to her in excess of 60% of the connubial estate. It is evident, that although not articulated as a specific finding, the judgment accorded proper influence to the uncontroverted evidence that the farm improvements, to the extent paid, derived from marital sources. The wife has no cause to complain of that disposition.

■ The wife next contends that the maintenance and child support awards are so inadequate as to manifest an abuse of discretion. § 452.335(2) defines seven factors to be considered in the determination of the maintenance order. They include, among others, the financial resources of the party seeking maintenance, the ability of the other spouse to pay and the conduct of the parties during the marriage. The evidence discloses that the conduct of both parties contributed to the demise of the marriage, and so that factor does not bear significantly on the adequacy of the maintenance award. § 452.340 defines six factors for the determination of the award of child support, among them, the financial resources of the child, of the custodial parent and of the noncustodial parent.

The trial court awarded the wife $100 per month for maintenance and $150 per month per child for support of the two children.

property purchased and mortgaged prior to the marriage by the husband remained the separate estate of the husband throughout the mar-

riage even though most of the mortgage payments were made out of community funds.

The husband earned a gross income of $19,-455 which translated into a net monthly salary of $1048.90. There was evidence that the wife was then somewhat disabled by an ankle disorder, a condition which would likely impair certain employments. She contended that to maintain the standard of living she and the children enjoyed during the marriage, she would require $945 per month, but that a monthly award of $300 for support of the children and $100 for maintenance would be sufficient if she were allowed to retain the home.

These contentions are grounded, in some part, on the misconception that the decree as entered apportions the bulk of the marital property to the husband, whereas, as demonstrated, the fact is to the contrary. In any event, these awards are well within the bounds of the evidence and an allowable discretion. The court appears to have concluded, and quite acceptably, that the physical indisposition of the wife was transitory and readily correctible and that the allocation of the marital property had, for all practical purposes, placed the parties on a parity of financial resource.

The judgment is affirmed.

All concur.