**Frank G. JAEGER,**
**Petitioner-Respondent,**

v.

**Thelma C. JAEGER,**
**Respondent-Appellant.**

No. 37170.

Missouri Court of Appeals,
St. Louis District,
Division Three.

Feb. 8, 1977.

Hanks, Taylor & Suddarth, W. Morris Taylor, Clayton, for respondent-appellant.

Charles M. M. Shepherd, Clayton, Law Offices of Frank L. Pellegrini, W. T. Weidle, Jr., St. Louis, for petitioner-respondent.

GUNN, Judge.

Petitioner-respondent Frank Jaeger filed a petition for dissolution of his seven year marriage to respondent-appellant Thelma Jaeger. The parties were married in 1968. The marriage was dissolved by court decree, and a division of marital property ordered but with no maintenance to be paid by either party. Thelma Jaeger has taken an appeal from the trial court's order, contending: 1) that the trial court erred in excluding certain property from the marital estate; 2) alternatively, that if the trial court was correct in determining what constituted marital property, the distribution order was inconsistent with the trial court's findings of fact and conclusions of law; 3) that the trial court erred in finding that she was not entitled to maintenance. We find that the trial court erroneously treated certain property as Frank Jaeger's separate property and reverse and remand.

■ We initially indite the standard of review governing this appeal: we must sustain the trial court's decree unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law or unless it erroneously applies the law. *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976); *Blessing v. Blessing,* 539 S.W.2d 699 (Mo.App.1976).

The trial court, after ordering the dissolution of marriage, found as a matter of law that there was approximately $60,000 in marital property to be distributed. The $60,000 was itemized as follows:

1.  $38,000 in the equity value of the real property, "i. e. after deducting the $8,500 real property interest contributed by the husband" [from the sale of his previous house] and "the $3,100 real property interest contributed by the wife" [from the sale of her previous house] to the purchase of 5109 Towne Center [the current house] for the present value of said property.[1]

2.  "$16,000 in silver bars, gold coins and silver coins.

3.  "Approximately $6,000 other monies considered marital property acquired in various forms of household furnishings, securities, etc."

The court, through a prolix maze of financial data and testimony that would confound an oracle, concluded that neither party's conduct warranted disproportionate distribution and divided the marital property as follows:

To Mrs. Jaeger—$15,000 to be paid to her by Mr. Jaeger from his own funds; $16,000 gold and silver in her possession;[2] household furnishings valued at $3,000.

To Mr. Jaeger—The parties' house subject to deed of trust, equity value according to the evidence—$29,415.15.[3]

Mr. Jaeger was also ordered to pay $4,400 in Mrs. Jaeger's attorney's fees.

Not included in the trial court's determination of what constituted marital assets were certain stocks and bonds held by Frank Jaeger at the end of the marriage and his interest in his company's pension plan. As stated by the trial court: "[t]he court concludes as a matter of law that the stock initially held by petitioner, Frank Jaeger, that was sold and converted to stock registered in joint names did not constitute marital property because even though acquired during the course of the marriage, it was an exchange." *Conrad v. Bowers,* 533 S.W.2d 614 (Mo.App.1975), decided after the trial court's action, makes the trial court's conclusion erroneous as applied to the facts of this case. Thelma Jaeger contends that the trial court erred in excluding such stock, bonds and pension plan interest as part of the marital estate. As there are different issues involved in determining whether the stocks and pension plan interest are marital property we treat them separately.

Prior to the marriage, Mr. Jaeger owned various stocks and bonds valued at approxi-

1.  *Our review of the record has not disclosed the basis for the $38,000 equity in the real property.* The present market value of the real property was placed at $50,000; the purchase price was $35,000. A $10,000 down payment was made and a $25,000 note signed to finance the purchase. At the time of trial, there had been a $4,250.85 total debt reduction, leaving a debt of $20,574.15 owing on the note. Using the $50,000 market value, there would be $29,425.85 equity in the house. We also observe that Frank Jaeger's testimony was not that he had contributed $8,500 from the sale of his previous home but that he paid approximately $7,000 from the sale of stocks and $3,000 from the sale of a previous home he had owned with Mrs. Jaeger. There is no indication that Mrs. Jaeger contributed anything on the downpayment, although she did make deed of trust payments of $1,299.75 during the marriage.

2.  The trial court found that at the time of trial, Mrs. Jaeger had $9,000 of the original $16,000 in gold and silver in her possession; that it was impossible from the testimony to trace precious metal transactions. The trial court found that at the time of the parties' separation Mrs. Jaeger took all of the $6,000 in gold and silver and sold much of it. She had invested some of the proceeds in silver, deposited some of the proceeds in various bank accounts and retained some in cash. The court found that the proceeds not reinvested (between $6,000 and $7,000) in addition to other monies she had were sufficient funds to cover Mrs. Jaeger's living expenses during the separation period to date of trial.

3.  Giving effect to what appears to be the evidence of a $29,425.15 equity interest in the house, rather than a $38,000 equity as found by the court, the division of property as apportioned by the court would not be equal, contrary to the court's expressed intention of distribution.

mately $104,000. During the course of the seven year marriage, Mr. Jaeger was involved in numerous stock transactions involving both the stocks he possessed prior to the marriage and stocks acquired during the marriage. When the parties separated, Mr. Jaeger had in his possession approximately $87,000 in stocks and bonds. Mrs. Jaeger contends that these assets should have been considered marital property. Mr. Jaeger, on the other hand, claims that those stocks purchased during the marriage were acquired "in exchange" for property he possessed prior to the marriage and therefore are his separate property. The trial court agreed with Mr. Jaeger.

To determine what constitutes marital property and what constitutes the separate property of the parties to the marriage, we turn to the Dissolution of Marriage Act for guidance. Section 452.330.1 [4] instructs the trial court to set apart to each spouse his property and then divide the marital property in such proportions as the court deems just. "Marital property" is defined in § 452.330.2 as "all property acquired by either spouse subsequent to the marriage." Listed, then, are exceptions to the definition. The exception we are concerned with in this case removes property acquired subsequent to the marriage from the marital estate that was "acquired in exchange for property acquired prior to the marriage." § 452.330.2(2). Furthermore, § 452.330.3 creates a presumption that property acquired subsequent to the marriage is marital property regardless of the status of the title to this property. The party attacking this presumption has the burden of showing that the property in question falls within the exceptions enumerated in § 452.-330.2.[5] Conrad v. Bowers, supra. Having set out these statutory guidelines, we now endeavor to apply them to the facts of this case.

For purposes of analysis, we place the stocks and bonds in Mr. Jaeger's possession at the time of separation into three categories: 1) stocks and bonds owned by Mr. Jaeger prior to the marriage and which had been retained solely in his name throughout the marriage;[6] 2) stocks and bonds acquired during the marriage with funds not shown to be derived from Mr. Jaeger's separate property;[7] 3) and stocks and bonds acquired during the marriage from funds derived from the commingled sale of separate and marital property.[8]

4. Statutory references are to RSMo Supp.1975 unless otherwise noted.

5. Section 452.330.3 reads as follows:
"All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of coownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection 2."

6. These stocks are: Airborne Freight; Anheuser-Busch; Jefferson Products; Pet, Inc. (preferred); Keystone S-4; and Spence Frank. These stocks amount to approximately $50,000 of the $87,000 in stocks and bonds held by Mr. Jaeger at the time of separation.

7. There are 3 stocks that fall within this category. 1) Dreyfus Fund; this was purchased in 1969, and Mr. Jaeger was unable to state with any certainty where the money came from to make this purchase. 2) Penzoil Offshore Gas; this was purchased, along with several other stocks, in 1970. None of Mr. Jaeger's pre-marriage stocks was sold in 1970, and no attempt was made by Mr. Jaeger to show where the money came from to make these purchases. 3) Trinity Corporation; this was purchased in 1972 and Mr. Jaeger admitted that he could not tell where the money to make this purchase came from. His testimony as to this stock was:
"Q. But you can't tell me where the money to buy Trinity came from, can you?
A. No, I can't. All I did was retrace all the buys and sells I made, and I did that."

8. These stocks and bonds are: Eckard (Ward); U.S. bond; Stifel-Nicholaus Partnership; Canadian American Partnership; MSI Data; Scott Paper; Aloha Airlines; Urban Fund; International Investors. (It should be noted that the record is somewhat confusing concerning the "Eckard (Ward)" stock. In his exhibit 3, Mr. Jaeger notes the purchase of this stock and lists it as: "Eckard (Ward)." In his exhibit 2, which lists stocks he possessed at the time of the separation, Mr. Jaeger lists the Eckard stock as: "Eckard, Jack." This discrepancy is never explained. However, since there is nothing in the record to show that "Eckard (Ward)"

■ The stocks and bonds in the first grouping do not constitute marital property. They were owned by Mr. Jaeger prior to the marriage (and therefore not acquired subsequent to the marriage), and they retained their identity as Mr. Jaeger's own property throughout the marriage; these stocks and bonds were properly considered his separate property by the trial court. *Conrad v. Bowers,* supra. See also *Stark v. Stark,* 539 S.W.2d 779 (Mo.App.1976), where the court stated: "[A]ll property acquired by a spouse prior to the marriage and which remains titled in that spouse after marriage is, in the absence of clear intention to contribute that property to the community or to the other spouse, the separate property of that spouse and will not be regarded as marital property." *Id.,* at 782.

■ The stocks and bonds falling within the second category, those that were acquired during the marriage with funds not shown to be derived from Mr. Jaeger's pre-marriage property, must be treated as marital property. As was noted above, property acquired during the marriage is presumed to be marital property. *Conrad v. Bowers,* supra; *In re Marriage of Powers,* 527 S.W.2d 949 (Mo.App.1975). The person attempting to overcome this presumption has the burden of showing that the property comes within the exceptions listed in § 452.330.2. There was no evidence in the record that these stocks and bonds were obtained in exchange for stock owned by Mr. Jaeger prior to the marriage.[9] He thus has failed to overcome the statutory presumption that such stocks are marital property. Therefore, the trial court erred in treating these stocks as Mr. Jaeger's separate property.

■ The third category of stocks and bonds poses a more difficult problem. We are confronted with the following question: If, during the marriage, a party sells property he owned prior to the marriage and, in addition, sells marital property, and then commingles the proceeds from these sales to purchase new property, is the newly acquired asset marital property or separate property or a mixture of both? We believe that the proper result under the statute is that the newly acquired property so purchased constitutes marital property, irrespective of the state of title of the newly acquired asset. We reach this result relying on the presumption created by the statute that property acquired subsequent to the marriage is marital property. We do not believe that the "exchange" exception found in § 452.330.2(2) is applicable when a person uses both his pre-marriage property and marital property to purchase new property during the marriage. In commingling his own assets with marital assets, the spouse has failed to sufficiently segregate his own property. Such a commingling is indicative of an intent on the part of the owner of the pre-marriage property to contribute it to the marital estate. Thus, the new assets procured from these commingled proceeds must be regarded as marital property. To further clarify our position, we set forth two examples illustrating how stocks now in Mr. Jaeger's possession were acquired from the sale of both stocks he owned prior to the marriage and stocks that constitute marital property. 1. *U.S. Bond:* The bond was purchased in 1971 and is still in Mr. Jaeger's possession.[10] The purchase price was $4,645. In addition to this purchase, several other stocks and bonds were purchased in 1971 at a cost of approximately $17,000. Mr. Jaeger testified that funds used to make these purchases came from the sale of six different stocks. Of these

has been sold, we conclude that it must still be in Mr. Jaeger's possession, and we will view "Eckard, Jack" as the same stock.

9. For a list of these stocks and the facts surrounding their acquisition see footnote 7, supra.

10. Mr. Jaeger's exhibit 3 shows the sale of a U.S. bond in 1974 for $1,662. However, his

exhibit 2 which lists stocks and bonds in his possession at the time of separation indicates that he still possesses a U.S. bond valued at $5,000. Since no other U.S. bonds are mentioned in the record, we assume that the bond in his possession at the time of the separation was the bond purchased in 1971.

six stocks, three had been owned by Mr. Jaeger prior to the marriage, and the other three were acquired during the marriage. Two of the stocks acquired during the marriage were not shown to have been obtained in exchange for property held by Mr. Jaeger prior to the marriage and therefore must be considered marital property under the presumption set out in § 452.330.3. (See our discussion of the second category of stock, supra). Therefore, the stocks and bonds purchased in 1971, including the U.S. bond, were obtained through the use of proceeds derived from the sale of pre-marriage stock and marital stock and must be regarded as marital assets. 2. *Stifel Nicholaus Partnership:* This asset was purchased in 1973 along with five other stocks and bonds, all of which are still in Mr. Jaeger's possession. The money used to make these purchases apparently came from the sale of 15 different stocks and bonds in 1973. While several of the stocks sold had been owned by Mr. Jaeger prior to the marriage, the bulk of the stocks and bonds sold in 1973 had been acquired in 1971. As noted in our first example concerning the U.S. bond, the stocks and bonds purchased in 1971 were marital property. Therefore, the stocks purchased in 1973 were derived from the sale of both Mr. Jaeger's separate property and marital property and thus must be considered marital property.

■ We conclude that of the stocks in Mr. Jaeger's possession at the time of the separation of the parties, only those that he possessed prior to the marriage and which retained their identity throughout the marriage should have been set aside as his separate property. The remaining stock (those falling within the second and third categories listed above) should be included in the marital estate and divided by the trial court pursuant to § 452.330.1.

### The Pension Plan

■ Mrs. Jaeger contends that the increased value of Mr. Jaeger's interest in his company's pension that accrued during the years they were married should have been treated as marital property by the trial court. Mr. Jaeger argues that his interest in the plan does not constitute "property" as the term is used in § 452.330. The trial court made no findings of fact or conclusions of law as to the nature of this pension plan. (It is clear from the record, however, that the trial court did not regard Mr. Jaeger's interest in the plan as marital property.) The only evidence concerning the characteristics of the pension plan came from Mr. Jaeger's witness, Weldon Canfield, the personnel director of the company employing Mr. Jaeger. As Mr. Canfield's testimony concerning the provisions of the plan, particularly Mr. Jaeger's rights to receive funds prior to the time he reaches the age of retirement, is skimpy and unrevealing, we believe that on remand the parties should be given an opportunity to produce more evidence concerning the nature of the plan and Mr. Jaeger's rights thereunder. *Household Finance Co., Inc. v. Watson,* 522 S.W.2d 111 (Mo.App.1975). Rule 84.14. In so doing, the parties should follow the criteria set out in *In re Marriage of Powers,* supra (in which a husband's interest in a pension fund was considered marital property) and *Robbins v. Robbins,* 463 S.W.2d 876 (Mo.1971), (in which the husband's right to his employer's contribution to the pension plan was found to be too contingent to be considered by the trial court in making an award of maintenance).

In view of our conclusion regarding the trial court's treatment of the marital property, we need not delve into Mrs. Jaeger's second contention which suggests that the trial court's order of distribution was inconsistent with the findings of fact and conclusions of law.

■ The issue of maintenance also requires attention. Mrs. Jaeger contends that an arthritic condition prevents her from working and that she is consequently entitled to maintenance; that the trial court's finding that she was employable was not

supported by substantial evidence.[11] Section 452.335.1 permits the award of maintenance to either spouse if the court finds that the spouse seeking maintenance lacks sufficient property to provide reasonable needs and is unable to support himself through appropriate employment.[12] See also *In re Marriage of Neubern,* 535 S.W.2d 499 (Mo.App.1976). The trial court found, however, that Mrs. Jaeger was employable and her arthritic condition was no deterring factor for her employment. The trial court so found despite Mrs. Jaeger's protestations that she could not work because of her arthritis. In our review of this point we are well aware of the strictures placed on our review—whether the trial court has abused its considerable discretion in the granting of maintenance awards. *Naeger v. Naeger,* 542 S.W.2d 344 (Mo.App.1976); *Murray v. Murray,* 538 S.W.2d 587 (Mo.App. 1976).

■■■■ The record shows that at the time the parties were married Mrs. Jaeger, who had a high school education, was generally in good health and employed as an office manager. Shortly after the marriage, she terminated her employment at the behest of Mr. Jaeger and because she was going to be busy with other matters. She did not work until after the parties separated six years later, and then she was employed in an insurance claims office. Her testimony was that she was forced to leave work after a month, as a rheumatoid arthritic condition caused so much pain that she could not work. She also testified that she was under a physician's care, had been bedridden and that her general physical condition was a barrier to employment. Mrs. Jaeger's 20 year old daughter corroborated the mother's testimony that she had been bedridden with arthritis. There was no substantial evidence to refute Mrs. Jaeger's testimony. But we are mindful of the admonition that due regard must be given to the trier of facts to judge the credibility of the witnesses, *In re Marriage of Heddy,* 535 S.W.2d 276 (Mo.App.1976), even if uncontradicted. *Labor Discount Ct. v. State B. & T. Co.,* 526 S.W.2d 407 (Mo.App.1975). The granting of maintenance is within the sound discretion of the trial court. *Naeger v. Naeger,* supra. We cannot therefore say that the trial court erred in concluding that Mrs. Jaeger was able to support herself through appropriate employment.

However, with the changed treatment of marital property and in light of the reevaluation of Mrs. Jaeger's employability status with possible supplemental evidence regarding her ability to work, it is conceivable that the matter of maintenance will be affected. Consequently, we believe that reconsideration of the maintenance issue would be proper, giving effect to § 452.335.-1, and if maintenance awarded, giving effect to § 452.335.2 and the guidelines of *In re Marriage of Dodd,* supra.

Mrs. Jaeger has cited several cases to support her claim that she should be entitled to maintenance. These cases are not in point, because they involved an *affirmance* of the trial court's exercise of discretion in ordering maintenance payments. See *In re Marriage of Dodd,* supra, and *Nixon v. Nixon,* 525 S.W.2d 835 (Mo.App.1975). Mrs. Jaeger's reliance on *In re Marriage of Powers,* supra, is not persuasive, as that case was not concerned with whether maintenance should be awarded but, rather, what the amount of such award should be.

The cause is reversed and remanded for further proceedings.

KELLY, P. J., and SIMEONE, J., concur.

---

**11.** In its conclusions of law, the trial court expressly found that Mrs. Jaeger could support herself through appropriate employment:

"The Court concludes as a matter of law that the respondent, Thelma Jaeger, is employable, that her arthritic condition would not prevent her from obtaining employment, and that her presently held education, training and experience is sufficient to enable her to find appropriate employment."

**12.** See § 452.335 and *In re Marriage of Dodd,* 532 S.W.2d 885 (Mo.App.1976), for a listing of relevant factors to be considered for maintenance awards.