STATE of Missouri ex rel. GAMBLE CONSTRUCTION COMPANY, INC., and the Travelers Indemnity Co., Relators,

v.

The Honorable Richard T. ENRIGHT, Judge of the Circuit Court of St. Louis County, Missouri, Division 3, Respondent.

No. 38552.

Missouri Court of Appeals, St. Louis District, Division Two.

Sept. 20, 1977.

Carroll J. Donohue, Alan B. Hoffman, St. Louis, Nicholas F. Esposito, Chicago, Ill., Ralph C. Kleinschmidt, St. Louis, for relators.

Donald L. James, Pat F. McLaughlin, Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, St. Louis, for respondent.

STEWART, Judge.

Original proceeding in prohibition. Gamble Construction Company (Gamble) and the Travelers Indemnity Company (Travelers), relators, seek to prohibit respondent judge from denying relators leave to file their third party petitions. Our preliminary writ is quashed.

The underlying cause is an action to enforce an equitable mechanic's lien, arising out of the construction of the Neiman-Marcus Frontenac Fashion Center in St. Louis County. Gamble was the general contractor on the project and Travelers the surety on the labor and material payment bond. The action was commenced March 30, 1975, by R. J. Stephens Drywall Co., a subcontractor. At the time this court issued its preliminary writ, the defendants were Gamble and its surety, Travelers, Carter Hawley Hale Stores, Inc., the owners of the project (owners), and at least nine other subcontractors on the project. Nine of the subcontractors have filed cross-bills for amounts allegedly due them from Gamble and to establish mechanic's liens against the property. Gamble has filed a cross-bill against the owner for amounts due as general contractor. Gamble has also alleged other causes of action against the owner. The nature of the other causes are not stated in the record.[1]

Discovery was commenced by the parties in the fall of 1975. On June 1, 1976, the court entered a pre-trial order with respect to the trial of the claims of the parties and set the case for trial on October 18, 1976.

Among the issues are claims for extra work (extras) done by the general contrac-

---

1. The only pleadings in the trial court that are before us are the Third Party Petition and the Motion for Leave to File Third Party Petition.

tor and the subcontractors. On June 7, 1976, plaintiff in the original action, took the deposition of L. F. Brengard who had been job superintendent for the project for Gamble. Mr. Brengard was not employed by Gamble at the time his deposition was taken. The testimony of Mr. Brengard developed facts that indicated to relators that they might have a claim over against the project architects for extras, which might be charged to Gamble because of negligence of the architects. Gamble and Travelers made further investigation with respect to this possible claim.

On September 15, 1976, Travelers filed its motion seeking leave to file a third party petition impleading John Carl Warnecke and Associates Inc. and Eleanor LeMaire and Associates, Inc., the architects on the project. On September 18, 1976, Gamble filed a similar motion. The petitions sound in negligence.

The motions were argued on October 1, 1976. The court, at that time, advised counsel that it would not grant leave to file the third party petitions. It withheld its ruling to permit relators the opportunity of petitioning this court for prohibition. We issued our preliminary writ.

The only ruling the trial court intended to make was to deny relator's leave to file their third party petition. The court did not undertake to determine whether the third party petitions stated a cause of action. The petition was not before the court for that determination and though briefed by the parties here, we do not rule that issue in this proceeding in prohibition.

We turn to Rule 52.11 as the focus of our discussion. That part of the rule pertinent to our discussion reads:

"(a) When Defendant May Bring in Third Party. At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and petition to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him. The third-party plaintiff need not obtain leave to make the service if he files the third-par-

ty petition not later than 10 days after he serves his original answer. Otherwise he must obtain leave on motion upon notice to all parties to the action. . . ."

The relators did not file their third party petitions within 10 days after they served their original answer. Therefore, it was necessary that they obtain leave of court to file the third party petitions.

■ "Leave of court" has been defined as "Permission obtained from a court to take some action which, without such permission, would not be allowable; . . ." Blacks Law Dictionary 1036 (4th ed. rev. 1968). "The right to implead is not an absolute right, even if the claim asserted is within the scope of Rule 52.11, but is a matter that is discretionary with the court." *State ex rel. Green v. Kimberlin*, 517 S.W.2d 124, 126[1] (Mo. banc 1974).

■ We may not lightly disturb the discretionary rulings of a trial judge. We may do so only when there is no sound basis for his ruling; when the court has abused its discretion.

When we consider the denial of leave to file a third party petition, we are required to look to the purposes of Rule 52.11. These purposes are so well stated in *State ex rel. Laclede Gas Co. v. Godfrey*, 468 S.W.2d 693 (Mo.App.1971) that we quote, 698:

"The purpose of third party practice is to avoid two actions which should be tried together to save the time and cost of a reduplication of evidence to obtain consistent results from identical or similar evidence and to accomplish ultimate justice for all concerned with economy of litigation and without prejudice to the rights of another."

■ If there is any reasonable ground upon which respondent could have denied leave, we must quash the preliminary writ. There is no requirement that the court make formal findings of fact and conclusions of law or that its reasons be formally expressed. Under these circumstances, we consider the issue before the trial court in

the light most favorable to the result which it reached. *Stark v. Stark*, 539 S.W.2d 779, 781 (Mo.App.1976).

The relators point out that the court in a discussion with counsel stated:

"THE COURT: Well, I feel very much inclined against anything that would delay the beginning of this trial on October 18. It seems to me that the architects have been there all this time, and, even though your discovery procedures may recently have discovered the possibility of negligence, it seems to me that the architects have always been there and the possibility of their participation in the negligence has always been there and it just, since we have set the case and I realize that there may be unfairness to both sides, it appears to me at this time that this case is not going to get any smoother as time goes on. In fact, it would probably get more complicated, if anything.

So on the basis of its being untimely, I am going to overrule your motions to join any more parties in this action."

The court also said, "Unless there is some way that the case can be separately tried, or something, at the end of this case."

Relators argue that the court abused its discretion because "it is evident that the court based its intended ruling . . . solely upon consideration relating to possible delay of the then approaching trial setting." We wish, at this point, to observe that the informal discussions between counsel and the court, as we see here, do not limit our consideration of the issue.

■ We believe that under the circumstances of this case, delay could be a valid reason for the court's position. The claims of ten subcontractors of Gamble were awaiting determination. The amounts involved were substantial, certainly delay has to be prejudicial to the subcontractors who are without the funds that they claim are due them. It has long been recognized that "justice delayed is justice denied."

Counsel for relator argues that they were diligent in pursuing the remedies of their clients. We recognized that counsel for relators are both diligent and able. However, we do not look to counsel, but to the client, Gamble. Mr. Brengard, the source of the information with respect to the alleged negligence of the architect, was the job superintendent for Gamble. His knowledge of the alleged negligent acts of the architects must be imputed to Gamble. *Hotchner v. Liebowits*, 341 S.W.2d 319 (Mo.App.1960).

Delay of the litigation is not the only reason given by the court. It also acknowledged its awareness of the fact that in granting leave to file the third party petition, it would be adding a tort action involving two additional parties, to an equitable lien action involving at least twelve parties. The issues are highly technical and complicated. If the issues could be tried together, the 14 parties with their varying issues could have been almost unmanageable. Considering the nature of the action and the delay entailed, we do not believe that the court abused its discretion.

There is still another reason why the court was justified in denying relief. The action pending before the court is an equitable lien action governed by Rule 101.11 et seq. The action is one in equity to be tried before the court, unless the court submits one or more issues to a jury in its discretion or because the court deems the parties are entitled to a jury trial on any separate issue or issues. Rule 101.16.[2] The third party petitions are actions at law that would, in any event, be tried separately from the equitable lien action.

Considering all of the circumstances of this case we cannot say that the trial court abused its discretion.

Our preliminary writ of Prohibition heretofore issued is quashed.

McMILLIAN, P. J., and REINHARD, J., concur.

---

2. Rule 101.16 also provides for the appointment of a referee at the instance of any party.