Lawrence DANIELS, Appellant,

v.

Constance J. DANIELS, Respondent.

No. KCD 29151.

Missouri Court of Appeals, Kansas City District.

Oct. 11, 1977.

Richard L. Colbert, Kansas City, for appellant.

Jay W. Jensen, Kansas City, for respondent.

Before TURNAGE, P. J., and WASSERSTROM and SOMERVILLE, JJ.

WASSERSTROM, Judge.

The marriage of the parties, Lawrence Daniels and Constance J. Daniels, was dissolved by decree dated July 8, 1976. Lawrence, on this appeal, challenges the property division ordered as part of that decree. Specifically, he alleges that the trial court erred in ordering cash payment by him to Constance of $3,700 to accomplish an equalization arising out of the division of specific items of property.

Constance came to Kansas City from Chicago in 1964, bringing with her six rooms of furniture and approximately $8,000 in cash. That cash was deposited in her own name in the Southeast State Bank. In 1967, the parties participated in a marriage ceremony, but one which in fact had no effect. Following that ceremony, which Constance believed to be valid, she changed her account at the Southeast State Bank to the joint names of herself and Lawrence. Although Lawrence made no deposits of his own money into that account, he assumed charge of it. Until the time that the account was closed in 1973, funds from this account were used to pay $1,800 on a mortgage loan against the house in which the parties lived, but which was and still is in Lawrence's sole name, and also to make repairs on that house, including $4,000 for siding, $200 from this account was also used to open an account in Lawrence's sole name with the Postal Employees Credit Union. The exact date upon which the Postal Employees Credit Union account was opened is not clear from the record.

In 1973 the parties entered into a valid marriage. Then Lawrence brought home a card for Constance to sign with respect to his Postal Employees Credit Union account, which she assumed would place that account into joint names just as she had done with her account. Thereafter, Constance thought of the Postal Employees Credit Union account as "ours" and she deposited therein virtually all of her earnings which amounted to approximately $400 a month. She testified that "I trusted and loved my husband and so I allowed him to—I obeyed him and did what he said to do, and so he told me what to do and I did it. I gave him the money and he disbursed with [sic] it." Although Lawrence in fact did not change the account to joint names, he did make disbursements from that account for joint purposes including the payment for a 1973 Chrysler which has been used by Constance and a 1969 automobile which has been used by Lawrence.

The parties separated in June, 1975. Lawrence has remained in possession of his house with all of the furniture which had accumulated there. Constance withdrew $3,000 cash and purchased new furniture which at the time of trial she valued at $1,500. Lawrence remained in possession of one automobile which he valued at $1,000 and apparently has some United States Savings bonds of an indeterminate value. Constance is in possession of an automobile valued at $3,500 and at the time of trial had a savings account with a balance of $2,300. Lawrence's account at the Postal Employees Credit Union at the date of trial on July 8, 1976, had a balance of $469; but two weeks previously on June 25, 1976, the balance in that account had been $9,924.72.

The furniture and two automobiles had been divided between themselves by the parties prior to the time of trial, and those items were set off and confirmed to each of them respectively by the court's order. The decree then went on to set over the Postal Employees Credit Union account to Lawrence and the funds in Constance's Federal Government Employees Credit Union account to her. The court further found that Constance "is entitled to a judgment against Petitioner [Lawrence] in the sum of $3,700.00 in order to accomplish an equitable division of the marital property" and the decree ordered Lawrence to pay that amount.

Lawrence's three points on appeal all concentrate on the provision last mentioned requiring the payment of the $3,700. He argues first that the Postal Employees Credit Union account was separate, not marital, property and that the trial court erred in considering any part of that account for the purpose of property settle-

ment. He argues that he owned that account before the marriage and that therefore the original amount plus all accretions even after the marriage constitute his separate property. He cites in support *Cain v. Cain,* 536 S.W.2d 866 (Mo.App.1976), in which real estate was held to be separate property of the husband even though marital funds were used after the marriage to make payments on the purchase money mortgage. Not cited by Lawrence but very much along the same line is *Stark v. Stark,* 539 S.W.2d 779 (Mo.App.1976), which holds that a husband is entitled as his separate property to real estate owned by him before the marriage even though substantial improvements were added to the property out of marital funds after the marriage.

In order to make this argument, Lawrence asserts that the account in question was opened before the marriage. Although the record is far from clear on this point, we will assume for the purpose of this opinion that such was indeed the fact. We shall also assume without deciding that the rule of *Cain* and *Stark* applies to a bank account established before marriage and that the prior separate ownership carries along with it, as the husband's separate property, all deposits thereafter made.

■ Nevertheless, even upon those assumptions, another principle comes into play which requires rejection of Lawrence's contention. This controlling principle is that a spouse may by agreement, either express or implied, or by gift, transmute an item of separate property into marital property. *Jaeger v. Jaeger,* 547 S.W.2d 207, 211 (Mo.App.1977); *Stark v. Stark, supra*; *Conrad v. Bowers,* 533 S.W.2d 614 (Mo.App. 1975); *In re Marriage of Jafeman,* 29 Cal. App.3d 244, 105 Cal.Rptr. 483, 492 (1972); *In re Nelson's Estate,* 224 Cal.App.2d 138, 36 Cal.Rptr. 352, 355 (1964); *Beam v. Bank of America,* 6 Cal.3d 12, 98 Cal.Rptr. 137, 146, 490 P.2d 257 (bank 1971); *Millington v. Millington,* 259 Cal.App.2d 896, 67 Cal.Rptr. 128, 139 (1968); *Title Insurance & Trust Co. v. Ingersoll,* 153 Cal. 1, 94 P. 94 (1908); *Noble v. Noble,* 26 Ariz.App. 89, 546 P.2d 358, 362 (1976); Fowler and Krauskopf,

"Property Provisions" 29 Journal of Missouri Bar 508, l. c. 512 (1973).

■ The facts here bring the case within that principle. Lawrence brought home a signature card leading Constance to think that his Postal Employees Credit Union account was being contributed to the marital joint assets. In that belief and trust that this account was "ours," she deposited therein $400 a month and Lawrence proceeded to use the funds for joint purposes. The parties by their actions clearly intended and acted upon the intention that the Postal Employees Credit Union account had been converted into and was to be marital property.

Lawrence argues next that if the Postal Employees Credit Union account is to be considered as marital property at all, it has to be evaluated as of the date of trial, July 8, 1976, when the balance was down to $469.00. There is some confusion in the record as to the date and amount taken into consideration by the trial court as controlling with respect to this account, but from the colloquies and the decree taken together it is obvious that the court meant to treat as controlling the balance of $9,924.72, which was in the account on June 25, 1976. Lawrence claims that this was improper for the reason that "the amount ordered to be paid must have as its basis some item identified as marital property * * * in existence on the date of the trial."

■ Lawrence's position in this regard is unacceptable. His huge withdrawal of approximately $9,500 just two weeks before trial was an obvious ploy to defeat Constance's rights. The court should look through this transparent maneuver just as courts have always disregarded fraudulent conveyances employed to hinder and delay creditors. This case is akin to *Barringer v. Barringer,* 514 S.W.2d 114 (Ky.1974) where immediately after a husband found out that his wife was filing for divorce, he proceeded to sell $25,000 in stock and spend it for a Carribean cruise, gambling in Las Vegas, and "entertainment." The court was unwilling to deprive the wife of the benefit of these funds which the husband had dissipat-

ed and held that the trial court properly included $10,500 thereof in the parties' net worth. Likewise here, the trial court was well justified in disregarding the $9,500 withdrawal made by the husband immediately before trial.

For his final point, Lawrence argues that by reason of the award of the $3,700 in cash, Constance ended up with a disproportionate share of the marital property. The law does not require parity in the division of marital property, nor that it be done with mathematical nicety according to any formula; rather, "the division of marital property is a matter particularly within the discretion of the trial court." *In re Marriage of Vanet,* 544 S.W.2d 236, l. c. 240 (Mo.App.1976). Here the trial court was basically undertaking to equalize the savings accounts held by the respective parties. The total of those two accounts (taking Lawrence's account at $9,774.72) was $12,074, and an equal division would have given $6,037 to each. In order that Constance might have the difference between that $6,000 and the $2,300 in her own account, the court very reasonably ordered Lawrence to pay her $3,700 out of his account.

Even aside from that, the court would have been justified in giving Constance substantially more than one-half of the marital property, because of Lawrence's ownership of the home in his own separate name. It will be remembered that funds from Constance's separate funds in Southeast State Bank had been expended on that property to the identifiable extent of at least $5,800. Even though that real estate with all the improvements thereto must stand as Lawrence's separate property, still the fact of his windfall can be taken into consideration in making appropriate division of marital property. *Stark v. Stark, supra.* In no view can the court's allowance of $3,700 in cash to Constance be considered inappropriate.

Affirmed.

All concur.